VEAL vs. CHARITON COUNTY COURT.

1. A county court, having loaned township school funds at ten per cent., has no right, upon the application of the inhabitants of the township, to reduce the rate of interest. In relation to these funds, the county courts are trustees. They have no authority to dispose of the principal or interest, otherwise than is prescribed by law. There is no difference, in this respect, between the principal and the interest. If they can give away the one, they can the other.

2. It is a great error to suppose that the inhabitants of a school township, for the time being, can dispose of, or in any way impair the township school fund. They are the passive recipients of its increase for the use of schools, so long as they are inhabitants of the township, but those who are to come after them, have as much right to it as they have, and it is the policy of the law to preserve it for them.

3. If a county court, having loaned township school funds at ten per cent. reduces the rate of interest, upon the application of the inhabitants of the township the circuit court, on the application of the school commissioners of the township, will, by mandamus, compel the county court to collect the whole amount of interest.

## APPEAL from Chariton Circuit Court.

TURNER, for appellant.

1. All the inhabitants of the township being interested in Dempsey's bond, he could not be released therefrom, or from any of its provisions, without the unanimous consent of such inhabitants. The county court had no power to relieve the obligors against the payment of the interest contracted for, and the order made for that purpose is a nullity: Butler vs. Chariton county court, decided in this court July 7th, 1850.

2. It was the duty of the county court to cause the collection of the interest in arrears, and on their refusing to do so, the circuit court ought to have awarded a process requiring them to perform this duty.

SCOTT, J., delivered the opinion of the court.

Veal, who was school commissioner of township 55 in range 19, in the county of Chariton, filed his petition in the circuit court of said county, praying for a conditional mandamus to the county court of that county, requiring that body to collect the annual interest due on a bond executed by James Dempsey and others to the said county for the use and benefit of the inhabitants, of said township, or to show cause to the contrary.

It appears that the bond bore ten per cent. interest, and that Veal, the commissioner for the said township, which was duly organized for school purposes, had applied to the county court to enforce the payment

Veal vs. Chariton County Court.

of the interest on the bond, which was by its terms made payable annually, and that the court had refused to grant the application.

The county court, in answering the mandamus, stated, that at the February term, 1849, James Dempsey presented a petition to said court signed by a majority of the householders of said township, praying said court to reduce the rate of interest on the said bond from ten to six per cent. Whereupon it was ordered, that James Dempsey, from and after the 1st January, 1849, pay to the county treasurer, six instead of ten per cent. interest on his bond until further ordered, and that the county treasurer be notified of this order. At the February term of the court, 1851, a petition, signed by a portion of the inhabitants of said township was presented, praying a recision of the former order, against which there was a remonstrance of some of the inhabitants. The court, upon a hearing of the petition and remonstrance, ordered that for the future, Dempsey pay ten per cent. interest on his debt.

This, in effect, remitted to Dempsey four per cent. of the interest on his debt for upwards of two years.

Upon the filing of the answer, it was demurred to by Veal, and his demurrer was overruled and a judgment for costs rendered against him, from which he appealed to this court.

Section numbered sixteen in every township was granted by the Congress of the United States to this State for the use of the inhabitants of such township for the use of schools. This grant was solemnly accepted by the people of this State, in convention assembled, who at the same time declared, that it should be the duty of the general assembly to apply the funds which may arise from such lands in strict conformity to the object of the grant. These sections, having been sold in pursuance to the laws of the State, the money arising from their sale is regarded as a substitute for the land granted. It is a permanent fund, not only for to-day or to-morrow, but for the distant future, and it is both the policy and the duty of the State so to manage it, that its benefits may be experienced by generations yet to come. This may seem impossible, but it is nevertheless the duty of those entrusted with the care and management of it, to use all endeavors to perpetuate its advantages as long as possible. It is a great error to suppose that the inhabitants of a township, for the time being, can dispose of or in any way impair the fund. They are the passive recipients of its increase for the use of schools, so long as they are inhabitants of the township, but those who are to come after them have as much right to it as they have, and it is the policy of the law to preserve it for them.

27

The ninth section of the second article of the act to provide for the the organization, support and government of common schools, entrusts the county courts with the care and management of the school funds of the respective townships within their jurisdiction. The succeeding section of the same article makes it their duty to loan the funds, for the highest rate of interest that can be obtained, not exceeding ten nor less than six per cent. In relation to these funds, the county courts are trustees. They have no authority to dispose of the principal entrusted, or any of its interest, otherwise than is prescribed by law. There is no difference in this respect between the principal and the interest of these funds. If they can give away the one, they can give away the other. If a neighbor should put money in their hands to loan out for him at interest, and they should give it away or release the interest, would they not expect to make it good out of their own purses? What is the difference between that case and this? Would they not be ashamed, when asked for the money with which they were trusted, to offer an excuse for not paying it, that all the people of the county in which they lived had petitioned them to give it away and they had done so? The welfare of the State is concerned in the education of her children. She has provided and is providing means for that purpose, not only for those now in existence, but for those who may come after them. The fund, as has been said, is a permanent one, and if every man, woman and child in a township should petition the county court to give it away, that which is by law entrusted to it, for the education of its children, it should without hesitation, reject their prayer. The will of the people, when expressed in relation to matters in which they have a right to interfere, should be respected by their agents, but when they call upon those to whom is confided the administration of the laws, to sacrifice their trusts and to violate their oath, their will should be disregarded.

The other judges concurring, the judgment will be reversed and the cause remanded.