MONTGOMERY COUNTY v. AUCHLEY, *Executor*, *et al.*, *Appellants.*

DIVISION TWO

1. **Surety**: BOND FOR SCHOOL MONEYS: CONSIDERATION. Where a surety signs a bond for school moneys in pursuance of an order of the county court for additional security, the consideration therefor is sufficient.

2. ——: ——: NUNC PRO TUNC ORDER, WHEN NOT ASSAILABLE. Where the county court on notice to the surety entered a *nunc pro tunc* order directing the giving of such additional security, and the surety took no steps to defeat such order, he cannot afterwards, and in a collateral proceeding, assail it.

3. **Bond**: CONSIDERATION. A bond under seal imports a consideration and a defendant who relies on its failure must plead and prove the same.

4. **Surety**: BOND FOR SCHOOL MONEYS: CONSIDERATION. One who signs, as surety, after delivery, a bond given for the loan of school moneys cannot avoid liability by showing that no written entry of the order requiring additional security was made of record in the county court, without also showing there was no other consideration for the promise to pay the bond.

5. ——: ——: ——: ESTOPPEL. Where it appears that such surety as agent of the obligor attended to the payment of interest on the bond for a period of six years and during that time the bond remained with the county court without his making any objection thereto, he will be estopped to plead failure of consideration.

6. **Joint Debtors**: RELEASE. A release by a creditor of one of several debtors does not discharge the rest. (R. S. 1889, sec. 2392.)

7. **Payment**: NOTE OR CHECK. Payment of a debt as between individuals may be made by a note or check, where there is a positive agreement to that effect.

8. **School Funds**: COUNTY COURT, POWERS OF. County courts are simply trustees of the school funds and all the powers they possess as to the same are derived from the statute.

9. ——: LOAN: COUNTY COURT. Under the statute (R. S. 1879, secs. 7103–7110) authorizing the county court to invest and manage the school funds and loan them on designated security, such court cannot delegate the power to make loans or to compromise those already made without requiring the final approval by the court of the security.

10. ——: ——: RELEASE OF SECURITY. The county court has no power to reduce the interest on a school-fund bond, nor can it dispense with the real-estate security required by the statute.

11. —— : —— : ——. Nor can the court discharge a surety from his liability on his bond for school moneys upon his delivery in payment his note with personal security as that in effect is a reloan, and the statute requires all loans of school funds to be secured by mortgage on real estate.

12. —— : —— : ——. A surety on a school bond cannot complain of the action of the county court in releasing any security taken unless it results in injury to him. (*Saline Co. v. Buie*, 65 Mo. 63.)

13. ——: ——. Persons executing a bond for loan of school moneys must be deemed to have knowledge of the statutory requirements relating thereto

*Appeal from Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Emil Rosenberger* for appellant Auchley.

(1) The judgment is against the law and evidence. It was essential that the plaintiff aver and prove that Auchley signed the note in pursuance of an order of the county court requiring the principal to give additional

security. *Stone v. White*, 8 Gray, 589; *Montgomery Co. v. Auchley*, 92 Mo. 126. (2) The *nunc pro tunc* order was not based on competent or sufficient evidence. *Bilken v. Rhodes*, 76 Mo., 643; *Fletcher v. Combs*, 58 Mo. 430. That the judgment was made or intended to be made by the court must appear either from the judge's docket or from the clerk's minutes of the proceedings, or from some paper in the case. *Bilkens v. Rhodes*, 76 Mo. 650; *Fletcher v. Combs*, 58 Mo. 430; *Gibson v. Chouteau*, 45 Mo. 171; *Turner v. Benoist*, 50 Mo. 145; *Bank v. Allen*, 68 Mo. 474; *Jones v. Hart*, 60 Mo. 351; *Woodridge v. Quinn*, 70 Mo. 370; *Fellers v. Baird*, 72 Mo. 389; *Atkinson v. Railroad*, 81 Mo. 50; *Gamble v. Dougherty*, 71 Mo. 599. (3) The evidence shows that plaintiff by its prosecuting attorney compromised with Gliser, and in full settlement and discharge of his liability accepted his note for $100 with two securities. The court should at least have given credit for the Gliser note.

*John M. Barker*, *Sol. Hughlett* and *John M. Wood* for respondent.

(1) The *nunc pro tunc* entry of the county court cannot be impeached in a collateral proceeding. Auchley was notified when and where the application for this *nunc pro tunc* order would be made, and he cannot now assail it, except in a direct proceeding, for that purpose. *Mann v. Schroer*, 50 Mo. 306; *Camden v. Plain*, 91 Mo. 117; *Johnson v. Beasley*, 65 Mo. 250; *Sims v. Gray*, 66 Mo. 616; *State v. Evans*, 83 Mo. 322; *Moore v. Davis*, 85 Mo. 468; *Jeffries v. Wright*, 51 Mo. 220; *Colvin v. Six*, 79 Mo. 200. (2) "The defendant Auchley by signing and sealing the bond meant something. It was as much as if he had prepared an independent instrument, reciting the former bond and the stipulation therein to give further surety and the order of the court, and in consideration of all that obligated himself to stand

bound for the payment of the debt." *County of Mont-gomery v. Auchley*, 92 Mo. 129. (3) The instrument sued upon was a sealed one importing a consideration. 92 Mo. 126 ; R. S., sec. 2389. The county court had no authority to compromise with Gliser ( one of the sureties ), or in consideration of his executing a note for a part of the amount due to discharge him on the bond, and it necessarily follows that it had no authority to authorize the prosecuting attorney or anyone else to make such an agreement with one of the securities. The compromise spoken of, or rather the attempted discharge of Gliser from the bond in consideration of his having executed a note for $100, being unauthorized, did not and does not in any way affect the rights of the plaintiff. The powers of county courts are limited and defined by law. The statutes constitute their warrant of attorney. Whenever they step outside of and beyond this statutory authority their acts are void. *Ray Co. v. Bentley*, 26 Mo. 272 ; 49 Mo. 236 ; *Washington Co. v. Boyd*, 64 Mo. 179 ; 87 Mo. 246 ; *Sturgeon v. Hampton*, 88 Mo. 203, and cases cited ; *State ex rel. v. Harris*, 96 Mo. 29.

THOMAS, J.—This action was commenced in 1883, on a school bond for $330, against Francis Auchley, Martin Hildebrand and Gustave Bachman. Hildebrand was not served, and the writ was dismissed as to him. Bachman did not answer, and judgment by default was rendered against him ; Auchley died in 1886, and his executor was made defendant, and he alone prosecutes this appeal.

It appears from the record that Martin Hildebrand borrowed $330 belonging to the school funds of Montgomery county, and on the twenty-fifth day of November, 1868, executed his bond for the same with Gustave Bachman and Christian Gliser as sureties. This bond was in the form required by section 68, page 270, General Statutes, 1865, and was secured by mortgage of

Hildebrand's real estate. On the twenty-eighth day of February, 1877, Francis Auchley signed the bond as a surety. The land included in the mortgage was sold, in 1883, for $50.

Defendant Auchley set up and relied upon two distinct defenses: *First*. That, having signed the note after it was delivered to the county, there was no sufficient consideration to bind him, and, *second*, that in 1883 the county court of Montgomery county authorized J. M. Barker, the prosecuting attorney of the county, to collect this bond and "to effect such compromise as he may consider best in the premises," and that, in pursuance of this authority, Barker took a note for $100, signed by Gliser, one of the sureties on the original bond, with James R. Hance and Mitchell Klingelhoefer as sureties, and then gave said Gliser a receipt, as follows:

"DANVILLE, Mo., May 10, 1883.

"Received of Christian Gliser a note for $100, signed by him, James R. Hance and Mitchell Klingelhoefer, dated May 9, 1883, and due in six months, eight-per-cent. interest, in full payment of his part of the bond for $330 given to Montgomery county, Missouri, for the use of school fund, township 49, range 5, dated November 28, 1868, and the said Christian Gliser is guaranteed against any further payment on said bond to said county or to Francis Auchley, his cosecurity, or to any other person.

"[Signed]      MONTGOMERY COUNTY, MO.

"By JOHN M. BARKER,

"Prosecuting Attorney."

Defendant claimed that this receipt relieved him wholly from liability on the bond, and, if not wholly, at least to the extent of this note for $100, which ought to have been credited on the bond the day of its date. The case was tried by the court and judgment was rendered against Auchley's executor for the whole amount of the bond.

The evidence shows that on the seventh day of February, 1884, the county court of said county made a *nunc pro tunc* entry, on motion of the prosecuting attorney, as follows: "Now comes plaintiff praying for an order, etc., also files notice to defendants who make default, and, motion being heard, the court finds from the evidence that the facts set out in plaintiff's motion are true ; that an order was made on the eleventh of August, 1876, by the county court, which order was substantially in the following form and effect, and which order is now ordered to be entered on the records of the court *nunc pro tunc*, viz.: In the matter of the loan made November 25, 1868, to Martin Hildebrand of $330 belonging to township 49, range 5, of said county. The court now deeming it necessary, for the better preservation of the said fund so loaned to said Hildebrand, he, the said Martin Hildebrand, is hereby ordered and required to give additional security on his bond for said loan and that notice of this order be served on said Hildebrand.

"In the matter of the loan of $330 school money to Martin Hildebrand, on the twenty-fifth day of November, 1868, and the taking of additional security on the bond therefor, on the twenty-eighth day of February, 1877: It appearing to the court that J. M. Barker, ex-county clerk, on February 28, 1877, acting for the public interest and at the request of M. Hildebrand and Francis Auchley, on said day, in vacation of the court, at his office, took and accepted said Francis Auchley as an additional maker and security on said bond, and the said Auchley then accepted and signed said bond to the county as maker and security therein ; it is, therefore, ordered and adjudged by the court that the said action of said county clerk be approved to all intents and purposes the same as though said active control and execution of said bond were all done by this court."

Both parties introduced evidence, one to show that this entry ought, and the other that it ought not, to

have been made.   The evidence showed further, that prosecuting attorney Barker took the note of Gliser and gave the receipt as alleged by Auchley.   It further appeared that Hildebrand was Auchley's father-in-law. Auchley often paid the interest on this bond after 1877, Hildebrand sending him the money up to 1883.   The Gliser note for $100 was not paid, there being evidence tending to prove that Gliser was insolvent.

The court gave no instructions.   The defendant, however, asked the court in substance to declare the law to be, *first*, that Auchley was not liable if he did not sign the bond in pursuance of an order of the county court requiring additional security; *second*, the order *nunc pro tunc*, February 7, 1884, was void, because there was no sufficient written memoranda of the previous order to authorize it; *third*, that Auchley was released from liability on the bond by reason of the release of Gliser, and, *fourth*, that in no event could Auchley be held for more than one-half the bond, on account of the release of Gliser, which the court refused to do, and the executor duly excepted.

I.   The first question presented by the record is, was there any consideration to support Auchley's promise to pay the debt?   It seems to be conceded by both parties that, if the county court made an order August 11, 1876, requiring Hildebrand to give additional security for the loan, and in pursuance thereof Auchley signed the bond, the consideration was sufficient to make him liable.   Indeed, this point was settled by this court in this same case, when here on a former appeal.   92 Mo. 126.   This being conceded, let us inquire whether the order requiring the additional security was in fact made.   The only evidence of this we have is the *nunc pro tunc* entry of February 7, 1884. The defendant attempted to attack this entry upon the ground that the county court was not authorized to enter it upon the evidence before it at that time.   This court has frequently held that a *nunc pro tunc* entry

cannot be made unless there be some *written* memorandum of the order authorizing it. *Belkin v. Rhodes*, 76 Mo. 643, and cases cited.

And it is insisted that the county court, in this case, had no such memorandum. This point would have been well taken if it had been urged before the county court at the time it was asked to make, and did make, the entry; but we think it comes too late now. The evidence shows that Auchley had ten days' notice that the motion for the *nunc pro tunc* entry would be made on February 7, 1884. That was after this suit was instituted and Auchley was then living. He had "his day in court" to resist the making of this entry and to take his appeal or seek some other remedy if he was defeated. This he did not do, and we cannot now in this collateral proceeding hear the evidence and entertain the objections that ought to have been tendered and interposed when the court made the entry.

The judgment of a court of record, entered after notice to the party to be affected, imports absolute verity and we can see no more reason for allowing a party to show that a judgment entering an order *nunc pro tunc* ought not to have been made, than to allow any other judgment to be attacked collaterally on the ground that it ought not to have been made. Auchley having had notice that this order would be applied for, and having taken no steps to defeat it, he is now concluded by it. *State ex rel. O'Bryan v. Koontz*, 83 Mo. 323, and cases cited; *Camden v. Plain*, 91 Mo. 117.

But, again, the bond in question, being under seal, imports a consideration, and "if the defendant relied upon a want of consideration he should plead it." *County of Montgomery v. Auchley*, 92 Mo. 129. And' being required to plead it, he must prove it. The plaintiff here was not bound to plead or prove a consideration. The defendant simply seeks to escape liability by showing that no order requiring additional security was entered of record in August, 1876. He does not

attempt to prove, nor does he claim, that no such order was in fact made, but only that no written memorandum of it was made. But, suppose no such order was in fact made, the defendant utterly failed to show that there was no *other* consideration for his promise to pay the bond. He attended to the payment of the interest on the bond for six years, was the son-in-law of the principal in the bond, and, as late as 1883, said he was liable for it.

Barker bought the land included in the mortgage given by Hildebrand to secure the debt in controversy, and Mr. Auchley employed counsel to have the sale set aside on the ground that Hildebrand had no notice of the sale and that the land was sold to Barker at a great sacrifice, and suit was instituted for that purpose. The matter was, after considerable negotiation, between Auchley and Barker finally compromised by Barker conveying the land to Auchley in consideration of $150. Auchley afterwards sold the land for $390. Previous to 1883, Hildebrand had moved to Arkansas and Auchley acted as his agent in regard to this school-fund bond.

This bond contained a stipulation for further security. Section 5389, Revised Statutes, 1879, requires county courts at the regular spring term in each year to ascertain the amount of interest, in arrears, on the loan of school moneys, "and the amount due by each borrower thereof respectively," and, by section 7112, power is given county courts to require, from time to time, additional security to be given on bonds, taken for the loan of school moneys, when, in their judgment, they "deem it necessary for the better preservation of the fund."

So we find that the defendant let the bond remain with the county court of said county for six years after he signed it, without raising any objection to it on the ground that there was no consideration for his signing it. It was the duty of the county court to examine, and it no doubt did examine, this bond at the regular

spring term each year from 1877 to 1883, inclusive, and finding Auchley's name on it, during all these years, it was not deemed " necessary, for the better preservation of the fund," to require additional security to be given. This conduct of Auchley's continued for such a length of time ought to estop him from setting up a want of consideration for his promise. *Chouteau v. Goddin,* 39 Mo. 229 ; *Garnhart v. Finney,* 40 Mo. 449 ; *Taylor v. Zepp,* 14 Mo. 482.; *Newman v. Hook,* 37 Mo. 207 ; *Spurlock v. Sproule,* 72 Mo. 503 ; *Acton v. Dooley,* 74 Mo. 63 ; *Bales v. Perry,* 51 Mo. 449.

If he had promptly made the objection at the regular spring term of the county court for 1877, the difficulty could have been easily adjusted in some way.   He stands by, however, paying the interest with funds sent him by Hildebrand for six years, makes no complaint, and when it is ascertained, that probably he will be called upon to do what his undertaking required him to do, pay the debt in case Hildebrand failed to pay it, he claims he is not bound, because the county court failed to enter of record an order that it had made, and, when the court notifies him that it proposes to enter this order *nunc pro tunc,* he interposes no objections, and then waits four years more and comes to another and different forum, and asks the latter to find that the court had no evidence sufficient to authorize the entering of a judgment *nunc pro tunc,* and to declare such entry utterly void.   This shows an attempt to escape liability on a dry technicality.   We hold that there is no merit in this plea of want of consideration.

II.   That the giving of the receipt to Gliser by Barker does not wholly release Auchley from liability, is settled by the statute.   R. S. 1889, sec. 2392, and cases cited in note " f."

III.   We come now to a more difficult question, and that is, should Auchley's executor have been allowed credit for the note given by Gliser for $100, to be credited as of May 10, 1883 ?   After a careful consideration

of the question, we hold that he was not entitled to this credit, and we will give the reasons why.

There is no question, that, as between individuals, payment of a debt may be made by note or check, where there is a positive agreement to that effect. And we may concede that if Auchley and Gliser had been indebted to an individual, and the receipt for the note, above quoted, had been given by such individual to Gliser, it would have operated as a payment of the debt *pro tanto*. But will the rule apply to the facts of this case? The solution of this question will depend largely upon the power of the county courts in regard to school funds. That they are simply trustees of these funds will not be disputed. All powers they possess in regard to them are derived from the statutes. Let us see then the extent of these powers. We will refer to the statutes of 1879, for these were in force when the transaction of giving the note by Gliser occurred.

By section 7103, it is made the duty of county courts "to diligently collect, preserve and securely invest" all school funds. The investment shall be made upon "unincumbered real-estate security, worth at all times at least double the sum loaned, with personal security, in addition thereto." By section 7109, it is provided, that the county courts "shall loan" school funds, "for the highest interest that can be obtained, * * * subject to the restrictions hereinafter set forth;" and the county courts may invest such funds in the bonds of the United States or of Missouri. Then section 7110 provides, that, "when any moneys belonging to said funds shall be loaned by the county courts, they shall cause the same to be secured by a mortgage in fee on real estate, free from all liens, and incumbrances within the county, of the value of double the amount of the loan, with a bond and personal security in addition thereto; and no loan shall be made to any person other than an inhabitant of the same county, nor shall any person be accepted as security who is not

at the time a resident householder therein, who does not own, and is not assessed on, property, in an amount equal to that loaned, in addition to all the debts for which he is liable, and property exempt from execution."

By section 1203, it is made a misdemeanor for a county judge to borrow county moneys or sign the note of anyone who does borrow them. As we have shown it is the duty of county courts to examine the bonds taken for these funds once a year, and when deemed necessary to require additional security to be given. Taking all these provisions together, let us inquire into the nature of the trust that is conferred on county courts in the management of these funds. In *Veal v. County Court*, 15 Mo. 412, the county court had loaned school funds at ten-per-cent. interest, and afterwards, on the petition of the inhabitants of the township to which the funds loaned belonged, the court reduced the rate of interest to six per cent. This court held that this order reducing the interest was illegal, and Judge Scott, in referring to these funds and the nature of the trust assumed by the county courts, in regard to them, said : " In relation to these funds the county courts are trustees. They have no authority to dispose of the principal intrusted, or any of its interest, otherwise than is prescribed by law. There is no difference in this respect between the principal and interest of these funds. If they can give away the one, they can give away the other. * * * The welfare of the state is concerned in the education of the children. She has provided and is providing means for that purpose, not only for those now in existence, but for those who may come after them. The fund, as has been said, is a permanent one, and, if every man, woman and child in a township should petition the county court to give away, that which is by law intrusted to it, for the education of its children, it should without hesitation reject their prayer."
*Board of Education v. Boyd*, 58 Mo. 276 ; *Jones v.*

*Mack*, 53 Mo. 147 ; *Montgomery Co. v. Auchley*, 92 Mo. 126 ; *Ray Co. v. Bentley*, 49 Mo. 236.

The county courts, being trustees of these funds, and the terms of the trust being prescribed by the most stringent statutory provisions in regard to the investment of the funds, and the kind and the nature of the security to be taken, the question arises, whether this trust or the performance of any duty in regard to it can be delegated. The question is material in the case at bar, because, when Barker took the note from Gliser and gave him the receipt, the transaction in effect amounted to an attempt to receive $100 from Gliser, and then reloan it to him. If the $100 should be credited on the bond of $330, as of the date of May 10, 1883, then in effect Barker received $100 from Gliser belonging to the school funds of township 49, range 5, and thereupon undertook to reloan it to him. Could he do this under the authority given him by the county court, "to effect such compromise as he may consider best in the premises?" But back of this arises another question as to the meaning of these words quoted from the order of the county court: Did the county court intend to confer power on Barker to take a note as a payment of a part of this bond? If so, then we hold that the order was void, for the simple reason that all the statutory provisions in regard to the loaning of school moneys require the *county courts to make the loans and take the security.*

This is a trust devolved upon these courts, which they have no power to delegate. The whole spirit and scope of these provisions prove this. We do not mean to decide, nor do we decide, that county courts may not appoint agents to do some of the acts necessary to make a loan. All we do decide is that the county courts must finally approve the loan and the security for it. *This* duty cannot be delegated. We do not deem it necessary to decide in this case, that county courts have no power to appoint agents to effect compromises of these

loans, but we do hold that county courts cannot appoint agents to take notes, and approve the securities on such notes, in payment of a loan already made. If a note is taken in payment of such loan, the security must be approved by the county court, and must conform to the statutory requirements, before it can operate as a payment. Here there is no pretense that any real-estate security was taken for the note.

Speaking of the power of the county court to take one security as a substitute for another Judge HOUGH in *LaFayette Co. v. Hixon*, 69 Mo. 581, uses this language : " The statute provides that when money belonging to the school fund shall be loaned, the county court shall cause the same to be secured by a mortgage in fee on real estate. * * * No authority is anywhere conferred upon the county court to dispense with the real-estate security required to be taken. The taking of such security is not a matter of discretion, but of positive statutory regulation. If the county court may take a mortgage and immediately thereafter release it, without payment of the debt it was taken to secure, and without taking in lieu thereof any other mortgage, it would seem to follow that the court might lawfully dispense with such mortgage in the first instance. So, also, might it in the same way dispense with the bond and personal security required to be taken. In this way the conditions and restrictions, with which the legislature has thought it prudent to guard the management of the school fund by the county court, might be disregarded and annulled. We see no reason, however, why one security may not be substituted for another, when the convenience of the parties may require it and the change can be made without detriment to the school fund."

If the county court has no power to reduce the interest on a school-fund bond, and cannot dispense with the real-estate security required to be taken, we are unable to perceive how the note taken by Barker, without being secured " by mortgage in fee on real estate,"

can operate as a payment *pro tanto* of the bond, for the whole of which Gliser was liable as the surety of Hildebrand, especially when it does not appear this note was approved by the court, nor can we perceive how the receipt given by Barker for such a note can operate to release Gliser from the payment of the original bond, no matter what Barker may have stipulated might be the effect of it.

But we do not construe the order of the county court in question as authority for Mr. Barker to compromise the claim by receiving anything but cash. And when he undertook to take a note from Gliser with personal sureties, only, and then give Gliser a receipt for the note as payment *pro tanto* on the bond in question, he did something that we hold the county court in the first place had no power to authorize him to do, even if the order had been in the most unequivocal terms, and in the second place what the county court did not authorize him to do. We deem it a wholesome rule to hold county courts to a strict performance of their duties in the management of this trust. With all these stringent provisions large sums of these moneys are frequently lost through negligent management. We would regard it as hazardous to lay down the doctrine that county courts may delegate the power to approve a loan and the security for a loan. If they can delegate this power to the prosecuting attorney, they can delegate it to anybody, not under oath, whether responsible or not, whether discreet or not, and if the bars should be thrown down thus, it would not be long till there would be no trust funds to be loaned.

Aside from all these considerations, payment by notes and checks even as between individuals are not looked upon with much favor by the courts, as the adjudged cases in this state will show. *Appleton v. Kennon*, 19 Mo. 637; *Howard v. Jones*, 33 Mo. 583; *Block v. Dorman*, 51 Mo. 31; *Holmes v. Lykins*, 50 Mo.

399; *Hughes v. Israel*, 73 Mo. 538 ; *Leabo v. Goode*, 67 Mo. 126.

Here one party claims credit for a sum included in a note given by another, which has not been paid and probably never will be. If the amount of this note had been paid it ought of course to be credited on Hildebrand's bond, but, being unpaid, it ought not to be so credited. How has Auchley been injured by the taking of this note and giving of the receipt to Gliser? In *Saline Co. v. Buie*, 65 Mo. 63, and *LaFayette Co. v. Hixon*, *supra*, it was held that a surety on a school bond could not complain of the action of the county court in releasing any security taken unless it results in injury to him. If Auchley has the whole amount of this bond to pay, he will not be deprived of his right to contribution from Gliser and the other sureties. R. S. 1889, sec. 2392. Besides that, he will be entitled to be subrogated to the rights of the county as to the note of Gliser. Hence, instead of being injured by the action of the court and Barker in regard to this transaction, he will be benefited, if the Gliser note proves to be worth anything.

These parties cannot be heard to complain if Gliser be not relieved from his obligation to pay the bond and Auchley failed to get credit for this $100 that was not paid, because when they signed the Hildebrand bond they must be held to have known the statutory requirements in regard to loans of the funds in question and to have acted accordingly. *Sturgeon v. Hampton*, 88 Mo. 203 ; *Payne v. King*, 38 Mo. 502.

Our conclusion upon the whole case is, that the judgment ought to be affirmed, which is accordingly done. All concur.