RIVERSIDE LUMBER COMPANY, Appellant, v. WILLIAM V. SCHAFER et al.

Division One, June 28, 1913.

1. SCHOOL FUND MORTGAGE: Not Authorized by County Court: Valid at Common Law and as to Third Parties. A bond and mortgage securing a loan from the county school fund, not authorized by the county court, but made by the county clerk and the county treasurer, are good as a common law bond and mortgage, not only between the mortgagors and the county court, but also between the county court and a third party who claims by virtue of a materialman's lien on said property and judgment and sale under execution, notwithstanding the fact that the statute makes the county court trustees of the school funds.

2. ———: Materialman's Lien: County Court Not Made Parties: Injunction. Where neither the county court nor the county was made a party to a suit to establish and enforce a materialman's lien upon the property, upon which there was a mortgage to the county court to secure a loan from the school funds, neither the county court nor the county was affected by the judgment rendered therein in favor of the materialman, or by a subsequent sale of the property under execution to him; and if the mortgage was a valid subsisting prior lien, the county court and sheriff could not, because of said judgment, be enjoined from selling the property under the mortgage.

3. ————: ————: **Priority of Liens: Waiver.** Whatever pref-
erence the materialman's lien had over a school fund mort-
gage is waived and extinguished by the failure of the material-
man to make the county court, the trustee of the school funds,
a party to his lien suit; and having failed to make him a party
to that suit, he cannot thereafter be heard to contend that his
judgment establishing his lien antedates and takes priority
over the mortgage—and that notwithstanding a materialman's
lien dates from the time the materials were furnished, and
the materials were furnished prior to the recording of the
mortgage.

Appeal from Cape Girardeau Circuit Court.—*Hon.
Henry C. Riley,* Judge.

AFFIRMED.

*Ed. L. Drum* and *Frank Kelly* for appellant.

(1)   County courts are trustees of the school
funds and can only deal with, handle and loan the
funds according to the provisions of the statutes, and
the statutes require the courts to make the loans and
take the security, and the courts cannot delegate such
power. Montgomery County v. Auchley, 103 Mo. 504;
Secs. 9827, 10808-10813, R. S. 1909; Knox County v.
Coggin, 105 Mo. 182; State ex rel. v. Moeller, 48 Mo.
331; State to use v. Bonner, 72 Mo. 387. There could
be no loan without an order of court. It must speak
by its record. Henry County v. Salmon, 201 Mo. 151.
(2)   The county was not necessarily a party to either
suit. Ray County v. Bentley, 49 Mo. 242; Cedar Coun-
ty v. Johnson, 50 Mo. 225; Township Board v. Boyd,
58 Mo. 279; Searcy v. Clay County, 176 Mo. 493.
Neither is the county a party to the loan of the school
funds, as the court acts not for the county, but as
trustees of the funds. Washington County v. Boyd,
64 Mo. 183; Morrow v. Pike County, 189 Mo. 610. Be-
tween the Adamses and the school fund the loan might
be good, but not when the mortgage taken as this one
was, intercepts or interferes with the lien of third par-

ties. (3) The judges of the county court might have
been made parties to the first suit if a valid mortgage
had been taken by the court, but if there had been a
valid mortgage and the judges were not made parties,
their interest was not affected, as provided by Sec.
4211, R. S. 1889. Whether the school fund mortgage
be good or held valid, the lien will take precedence
over it even though the county justices were not made
a party to the first suit establishing the lien. Schulen-
berg v. Hayden, 146 Mo. 583; R. S. 1899, sec. 4205;
R. S. 1909, sec. 8215; R. S. 1899, sec. 4209; R. S. 1909,
sec. 8219; R. S. 1899, sec. 4211; R. S. 1909, sec. 8221.
Now, if plaintiff is correct that the county is not a
necessary party, but that the justices of the county
court are the proper parties, then they are the parties
to the present suit, and had the opportunity to con-
test the mechanic's lien generally in this proceeding,
and that is all they are entitled to, according to the
above decision of this court. The mechanic's lien dates
from the commencement of the work on the building,
or the furnishing of the material. Brick Co. v. Bor-
mans, 19 Mo. App. 664; McAdow v. Sturtevant, 41 Mo.
App. 220; Schulenburg v. Hayden, 146 Mo. 591; Doug-
las v. Zinc Co., 56 Mo. 388; Allen v. Sales, 56 Mo. 28;
Holland v. Cundiff, 96 Mo. App. 67; Fire Extinguisher
Co. v. Farmers El. Co., 165 Mo. 171. The lien dates
from the first item in the lien account filed. Coe v.
Ritter, 86 Mo. 277. Plaintiff began in this case to
furnish material on September 19, 1905, and the mort-
gage was not put on record until October 5, 1905. But,
even if the court was correct in holding that plaintiff
should have made the county, or the county judges
party to the first suit, and that the loan of school
funds made by the county clerk and treasurer, to the
Adamses was valid, plaintiff's bill should not have
been dismissed, but the court should have decreed that
plaintiff was entitled to its lien on the building and

that it should have had precedence over the mortgage. R. S. 1909, sec. 8215.

*Wilson Cramer* for respondent.

(1) The contemplated sale sought to be enjoined was ordered by the county court in pursuance of section 9835, which authorizes an order of sale when the principal and interest of a school fund bond secured by mortgage with power of sale becomes due and payable. R. S. 1899, sec. 9835. (2) No formal order by the county court for the loaning of school moneys is necessary. The statute provides that the bond given for such loans shall be to the county for the use of the school fund, and that it shall be secured by mortgage. R. S. 1899, secs. 9832 and 9833. In the present instance the bond of Mattie V. Adams and Ben. H. Adams is made to the county of Cape Girardeau, and in the mortgage given to secure it the county is named as party of the second part. (3) By the mortgage the title to Lot 48, Range I, is vested in the county of Cape Girardeau as a trustee to secure the debt, and, since the county was not made a party to the mechanic's lien suit, it is not affected by the judgment rendered therein. R. S. 1899, sec. 4211; Russell v. Grant, 122 Mo. 161. (4) The county's right as trustee in the mortgage being unimpaired by the judgment in the mechanic's lien suit, its power to sell remains in full force. It is now too late to undertake in this suit to establish a priority of lien. Actions to enforce mechanics' liens must be brought within ninety days after the lien is filed. R. S. 1899, sec. 4218. (5) Nor could equities between the plaintiff and the county of Cape Girardeau, as trustee for the school funds, if any such existed, be settled in the present action, for the reason that the county is not a party. The suit is against the county judges and the sheriff.

WOODSON, P. J.—This suit was instituted in the court of common pleas of Cape Girardeau county by the plaintiff and appellant, against the judges of the county court and sheriff of said county, to enjoin the sale of Lot 48, Range I, of the city of Cape Girardeau, under and by virtue of a certain mortgage given to secure $1800, borrowed by Mrs. Mattie V. Adams and her husband, Ben H. Adams, from the school funds of said county.

The facts are undisputed and are as follows, as appears from the statements of counsel for appellant and respondents:

Ben H. and Mattie V. Adams were husband and wife, and the owners of Lot 48, Range "I," in the city of Cape Girardeau, Missouri, in the year 1905, except a certain portion thereof sold to Nellie Phelan on August 16, 1905, which is not material to this suit.

Some time during September, 1905, they let and entered into a contract with one A. J. Schmidt to erect a building on the lot, and Schmidt began to secure material for the building from the plaintiff, Riverside Lumber Company, on the 10th day of September, 1905, under a contract with it to furnish the material. The lumber company's books show that the lumber was charged to A. J. Schmidt for Adams building. The material continued to be furnished from time to time until February 2, 1906. The testimony shows that part of the material was delivered on the grounds where the building was erected during September, 1905; and that the foundation was built during September, 1905, and that the foreman of the carpenters took his crew of carpenters to the building on October 7, 1905, and found the basement or cellar already dug, walled up, the foundation built and ready for the carpenters to begin their work.

On October 5, 1905, Mr. and Mrs. Adams borrowed from the school funds of said county $1800, and placed

on record a school fund mortgage to the county of Cape Girardeau on Lot 48, Range "I," for said sum.

The lumber company furnished material to the amount of $897.83, which was used in the building erected by Schmidt under his contract with Mr. and Mrs. Adams. The material was not paid for, and the lumber company on April 12, 1906, filed its itemized statement, duly verified, in the office of the circuit clerk of Cape Girardeau county, gave notice to the Adamses and the purpose thereof, and on the 4th day of May, 1906, brought suit against Ben H. and Mattie V. Adams and A. J. Schmidt on its lumber account and to establish a lien against Lot 48, Range "I," in the Cape Girardeau Court of Common Pleas, from which court a change of venue was taken to the circuit court. The case was tried at the August term, 1906, and resulted in a judgment for plaintiff in the sum of $897.83, which was declared a lien against Lot 48, Range "I." The Adamses appealed the case to the St. Louis Court of Appeals, and the judgment was affirmed by that court.

In that case the county, the mortgagee named in the mortgage, was not made a party, nor any of the county judges. Afterward the plaintiff caused a special execution to be issued on its judgment and the sheriff levied the same on Lot 48, Range "I," advertised it under the execution, and at the January term of court, 1909, sold it, and the plaintiff became the purchaser thereof.

After the plaintiff bought the property and took possession of it, the county court made an order on June 7, 1909, directing the sheriff to sell the lot under its mortgage taken for the school fund to secure the loan made to Adams in 1905, which mortgage was recorded after the plaintiff began to furnish the material and after the building was begun.

A copy of the order was delivered to the sheriff and he advertised the lot and was going to sell it,

which is admitted by defendants, when plaintiff brought
an injunction suit against the members of the county
court and the sheriff, at the August term, 1908, ask-
ing that they be restrained from selling the lot, or of-
fering to sell it, or in anywise subjecting the said lot
to the school fund mortgage, and a temporary injunc-
tion was granted, which, upon hearing, in January,
1909, was dissolved, and plaintiff's petition dismissed.

The record shows that the county court never
made any order directing the loan of said school funds
to be made to Adams, never approved the bond, or
did anything with it except the clerk testified that the
court had directed that the interest be collected on
it. He testified that Mr. Adams appeared before the
court and asked orally for a loan of the school funds;
that Adams was informed that no funds were then
on hand, but might be later. Later some funds were
paid in, and that then the county clerk and the treas-
urer let Adams have the money, took his mortgage
and bond, and put them on record. There never was
any record made by the county court approving the
action of the clerk and treasurer, and no action ever
taken by the court, except afterward it ordered the
interest collected, and then made the order in June,
1909, that the sheriff sell the lot. It does not appear
that the county court ordered or authorized the clerk
and treasurer to make the loan.

No declarations of law were asked or given; the
case was tried by the court and judgment rendered
dissolving the temporary injunction and dismissing
plaintiff's bill.

Counsel for appellant presents the following as-
signment of errors:

1. The court erred in dissolving the injunction
and permitting defendants to sell the property of ap-
pellant.

251 Mo.—35

2. The court erred in dismissing plaintiff's bill and refusing to make the injunction permanent, and to grant plaintiff the relief asked.

3. The court erred in applying the law of the State to the facts of the case.

4. The court should have determined the equities of the parties in the property and decreed plaintiff a lien on the building, at least.

I. It is first insisted by counsel for appellant that:

"The county courts are trustees of the school funds and can only deal with, handle and loan the funds according to the provisions of the statutes, and the statutes require the courts to make the loans and take the security, and the courts cannot delegate such power."

In support of this insistence we are cited to the case of Montgomery County v. Auchley, 103 Mo. 492. That case fully sustains this insistence of counsel, but nevertheless that fact does not vitiate the bond and mortgage securing the loan, for the reason that Adams and wife actually borrowed the $1800 of the school funds of said county and executed to the county court thereof the mortgage in question as security for the payment of the same. The bond and mortgage as between the parties thereto were good as a common law bond and mortgage, notwithstanding the fact that the loan may have been made by the county clerk and county treasurer. This is conceded by counsel for appellant, but they insist that the mortgage as between the county court, the trustee of said funds, and the appellant, is invalid, and for that reason alone the decree of the circuit court should have been for the appellant, enjoining the sale.

No authority is cited in support of this proposition, and we can see no substantial reason for so hold-

*School Fund Mortgage: Good at Common Law.*

ing, where the mortgage, as here, was made to the county court and was duly recorded and accepted by it.

And especially should the mortgage be held valid where no formal order of the county court is by statute required to be made for loaning the school moneys. [Secs. 9832 and 9833, R. S. 1899.]

We, therefore, decide this insistence against the appellant.

II. Counsel for appellant next contend that the county court was not a necessary party to the suit enforcing the mechanic's lien.

This may be conceded and probably is true, which will receive attention later, yet the mortgage in question created a lien on the lot in controversy in favor of the county court of said county, as a trustee of the school funds of that county, and since neither the county nor the county court were made a party to the mechanic's lien suit, it was not affected by judgment rendered therein. This is expressly made so by section 4211, Revised Statutes 1899, which provides that all parties interested in the property may be made parties to such suits, "but such as are not made parties shall not be bound by any such proceedings."

School Fund Mortgage: Mechanic's Lien: Necessary Parties.

This court in Russell v. Grant, 122 Mo. 161, held that under section 6713, Revised Statutes 1889, the same as section 4211, Revised Statutes 1899, a mortgagee of land, on which a building is subsequently erected, is not bound by a proceeding under the mechanic's lien law, to foreclose a lien against the building for materials, unless he was made a party to the suit.

That being true, and the county court, under section 9835, Revised Statutes 1899, having regularly made an order ordering the lot sold to pay the school

fund mortgage, the sale should have proceeded in
due course, and the decree of the circuit court, dis-
solving the temporary injunction and dismissing plain-
tiff's bill was proper, unless the injunction should have
been made perpetual for some other reason, which
counsel for appellant say existed, which we will con-
sider in the next paragraph of the opinion.

III. The final contention of counsel for appel-
lant is that since the work and materials done and fur-
nished upon the lot in question were be-

**Priority of Liens: Mechanic's Lien: School Fund Mortgage: Parties: Waiver.**  gun prior to the date of the recording
of the mortgage, the mechanic's lien
therefore takes precedence over the
mortgage.

It is well settled law in this State
that a mechanic's lien dates from the
commencement of the work on the build-
ing, or the furnishing of the materials therefor. [Hy-
draulic Brick Co. v. Bormans, 19 Mo. App. 664; Schu-
lenburg v. Hayden, 146 Mo. 583, l. c. 591; Douglas v.
Zinc Co., 56 Mo. 388; Allen v. Sales, 56 Mo. 28; Fire
Extinguisher Co. v. Farmer's Elevator Co., 165 Mo.
171; Coe v. Ritter, 86 Mo. 277.]

It is, therefore, settled that at the time the ma-
terials were furnished and the work done upon the
building, the mechanic's lien had precedence over the
mortgage, for the reason that the appellant began to
furnish the materials for the building September 19,
1905, and the mortgage was placed on record October
5 of same year.

And for that reason counsel for appellant con-
tend that the circuit court should have so decreed in
the case at bar, and, therefore, should have made the
temporary injunction perpetual instead of dissolving
the same, as it did.

In response to that contention, counsel for re-
spondents insist that even though it be true that at the

time work was done and the materials were furnished, the appellant's mechanic's lien had precedence over the mortgage, yet he insists that appellant lost that preference by not making the county court a party to. the mechanic's lien suit; and then and there had the priority of its loan established in that suit, which it might have done under section 4211, Revised Statutes 1899.

In reply to that insistence counsel for appellant contend, that, if it be true, as we have previously held, that the interest of the county court was not affected by reason of the fact that it was not made party to the mechanic's lien suit, then the question of priority of the two loans was not adjudicated therein, and consequently should have been decided by the circuit court in this case, in its favor, and should, therefore, have made the injunction perpetual.

In answer to the last contention of counsel for appellant, counsel for respondents insists that the conclusions drawn by counsel do not necessarily follow from the premises stated, his position being that it was too late to undertake in this suit to establish priority of liens, because, as stated, that an action to enforce a mechanic's lien must be instituted within ninety days after the lien is filed, as required by section 4218, Revised Statutes 1899, and in which the lien, as well as the priority thereof, should have been determined. In other words, counsel for respondents insists that the appellant is no more entitled to bring a suit to establish or enforce the priority of its lien after the expiration of the ninety days, than it would be to bring a suit to enforce the lien itself.

No authority is cited in support of this proposition, and none to the contrary, except the case of Schulenburg v. Hayden, 146 Mo. 583.

But in that case the mortgages antedated the mechanic's lien, and the mortgagees and all other persons interested were made parties to the mechanic's

lien suit; which resulted in a judgment establishing the lien of Reader, the materialman, for $445, against the building alone, and necessarily thereby decreeing the mortgage liens had the priority over the mechanic's lien, as to the remainder of the property. The mortgages covered the lots and the house thereon. The latter was worth about $6000. It was damaged by fire to the extent of $4000. The owner of the property had it enlarged and repaired, so it was then worth $10,000. One Reader furnished $445 worth of material, which went into the building and for which he was not paid, and he filed his lien and afterwards in due time filed his suit to enforce the same. The court rendered judgment in his favor for said sum and declared it a lien on the building alone. Reader had the building sold under that judgment, and Schulenburg became the purchaser thereof, and brought that suit in replevin to recover the possession of the house. This court, in that case, held that, notwithstanding section 4205, Revised Statutes 1899, which reads as follows: "The lien for the things aforesaid, or work, shall attach to the buildings, erections or improvements for which they were furnished or the work was done, in preference to any prior lien or incumbrance or mortgage upon the land upon which said buildings, erections, improvements or machinery have been erected or put; and any person enforcing such lien may have such building, erection or improvement sold under execution and the purchaser may remove the same within a reasonable time thereafter," the mortgagee was entitled to retain the possession of the building for the reasons stated in said opinion. From this brief statement of that case, it will be readily seen that it is not an authority for the position contended for by counsel for appellant.

I have made quite an exhaustive research for authority upon this question, and so far have been unable to find any in this State or elsewhere, and I there-

fore feel safe in saying that this is a question of
first impression presented to this court, if not this
country.

We will then have to approach its consideration
upon principle rather than upon authority.

It is the general policy of the law to settle all
litigation between the same parties, regarding the same
subject-matter, in one suit; and it is upon this princi-
ple that all parties interested in the subject-matter of
a suit are, by the Practice Act, or rules of equity, au-
thorized or required to be made parties. The statutes
and rules of equity recognize a distinction between
proper and necessary parties, the details of which are
not here necessary to be noted; but in this class
of cases it seems from a careful reading of the act
regarding mechanics' liens and the construction placed
thereon by the courts of the State, that it was the de-
sign of the Legislature to compel a party entitled to a
lien for labor done, or materials furnished upon a build-
ing, to make all persons interested in the subject-mat-
ter of the suit, whom he wished to be affected there-
by, parties defendant, and if he failed to so do, then
their right should not be affected thereby. This, it
seems to me, is made manifest by the fact that the stat-
ute requires all such suits to be instituted within
ninety days after the lien is filed, which was clearly
for the purpose of clearing up and keeping the titles
to lands clear of all liens and incumbrances of this
character; and in pursuance of that general policy the
courts have uniformly held that if, through mistake,
oversight, inadvertence or for any other reason, the
suit to enforce a mechanic's lien is not brought within
the ninety days after filing the lien, the lien cannot be
enforced against any one interested in the property;
and it has also been held that if the owner of the prop-
erty, for any reason, is not made a party to the suit,
within said ninety days, no lien can be established
against his interest therein.

That being true, then by parity of reasoning, I am unable to see how it can be logically said that the interest of any other person in the property can be tried and adjudicated, if the suit is not begun against him within said ninety days. I can see no reason for differentiating the interest of the landowner and that of the mortgagee in proceedings to enforce mechanic's liens against property in which both are interested.

The statute makes no such distinction, nor does the general policy of the law, but upon the contrary, there are just as valid reasons for adjudicating the priority of liens as there are for establishing the lien against the owner of the legal title, for otherwise the mortgagees and other lienors and prospective purchasers of the land and assignees of such mortgages and liens, would have no knowledge or information as to whether or not the owner of the mechanic's lien intended or desired to enforce it against them, and thereby becloud the title and interest of all mortgagees and other lienors.

If such is the law, then the rights of all such depend entirely upon the contingency as to whether or not the former will institute proceedings at any time, before his rights are barred by the Statute of Limitations, to enforce his priority. And it should be borne in mind that a mechanic's lien is not like a mortgage or deed of trust, which create a lien when delivered, but suit must be brought by the party entitled thereto, to enforce the mechanic's lien, which is purely optional upon his part; he may or may not bring suit as he deems proper, or he may sue one or all of the parties interested in the property, as he may deem necessary to collect his debt.

So, viewing this case upon principle, I am fully satisfied that whatever preference the mechanic's lien had over the school mortgage, was waived and extinguished by the owner thereof not making the county

·court, the trustee of the school funds, a party to the mechanic's lien suit.

We are, therefore, of the opinion that the judgment of the circuit court should be affirmed; and it is is so ordered. All concur.