There is not much controversy over the facts in this case. With slight alterations we are using the statements are submitted by the appellants and the respondent.
These are separate appeals prosecuted by the appellants from judgments rendered in Division Number One of the Circuit Court of Jasper County, in separate suits, in one of which suits Perry Burgess was plaintiff and in the other John L. Stauffer was plaintiff, and in both cases the Joplin Lumber Company, a corporation, was defendant. In these suits the respective plaintiffs below sought to have the defendant enjoined from removing a portion of a building which was partially located on land owned by the plaintiff Burgess and partially located on land owned by the plaintiff John L. Stauffer, which portion of said building the defendant Joplin Lumber Company was threatening to remove by virtue of having been the purchaser of same at a Sheriff's sale under execution issued pursuant to a mechanics' lien judgment which had been rendered in the Circuit Court of Jasper County, in favor of said Joplin Lumber Company and against one J. D. Wineland. On trial below the trial court found in favor of the defendant and against the plaintiff in each of said cases, and rendered its decree dissolving the temporary restraining orders which had theretofore been issued in each of said cases, and declaring that the plaintiffs were not entitled to the relief sought by them. It is from these judgments that these appeals are taken. By order of this Court, the two cases have been consolidated on appeal and the plaintiffs given permission to file joint abstract of record and joint brief.
Prior to September 21, 1936, the plaintiff Perry Burgees was the owner of the following land located in Jasper County, Missouri: "All of the South One-half (S-1/2) of Section Nineteen (19), Township Twenty-nine (29), Range Thirty-three (33), excepting fifty (50) acres off the north side of the South-west Quarter (SW-1/4) of said Section lying west of the Kansas City Southern Railway Company right-of-way, and excepting right-of-way of Kansas City Southern Railway Company and right-of-way of Missouri State Highway number 57."
On September 21, 1936, the plaintiff Perry Burgess sold and conveyed to the plaintiff John L. Stauffer all of the above described tract of land exception 7.43 acres which was located in the southwest corner of said tract of land, and which had been improved as a tourist hotel and camp and pleasure resort, known as "Cross Country Club Development." On September 14, 1936, the plaintiff Perry Burgess, by written lease, leased the Cross Country Club property (being the 7.43 acres not conveyed to plaintiff Stauffer) to one J. D. Wineland, for a term of five years at a stipulated monthly rental. In this lease the Cross Country Club Development was described as containing "approximately five acres and being bounded by certain wire fence, together with all buildings and improvements located thereon," etc., but the actual size of this tract of land was, as stated above, 7.43 acres. The lease from Burgess to Wineland contained a provision that, "the Lessee is expressly given the authority and permission to erect additional buildings and improvements on the premises hereby leased which shall become a part of the realty and the property of the Lessor herein upon the termination of this lease, unless the option herein provided for is exercised." The "option" referred to in said clause was an option of purchase of the land which was contained in the lease agreement.
At one time there had been located on the Cross Country Club property a certain frame building used as a dance hall, restaurant and club house and known as "Cross Country Club." However, prior to the leasing of said premises to Wineland, this building had been partially destroyed and damaged by fire, so that, at the time of the execution of the lease from Burgess to Wineland there remained of the original building, a kitchen room 25.6' x 49' in size, the roof of which had been partially damaged, and the remains of an adjoining room, consisting of a smooth concrete slab floor, foundation walls, a certain brick fire-place, and a steel truss used to support the roof thereof. *Page 1006 
Shortly after the execution of the lease to him, Mr. J. D. Wineland began the work of repairing and reconstructing the Cross Country Club building. The roof of the kitchen was repaired and the front part made into a ladies' rest room; the fireplace part was incorporated into a "lounge" room, 33' x 40' in size, resting upon the old foundation walls. The steel truss was again used to support the roof over this room, but the original concrete floor was covered by a hardwood floor. Extending from the lounge room and connected to it and also to the front part of the kitchen room by means of door ways, was a large room 70' x 120' in size, to be used for dancing and skating purposes. Beyond this was the concrete-floored boiler room, 15' x 18' in size, connected to and used in heating the dancing and lounge room. Atop the kitchen roof was a large motor-driven fan, connected by means of wooden ducts to the dance hall and used to draw off stale air.
As completed and opened to the public, the reconstructed and repaired Cross Country Club building consisted of four rooms with common walls between.
Due to the physical location of the original Cross Country Club building and the scope of the plans for its reconstruction, it became apparent to the builder, early in the course of reconstruction, that a portion of the building consisting of the entire boiler room and a part of the dancing and skating room would necessarily extend over and upon land adjoining the leased premises, that is to say, on the land of the plaintiff Stauffer.
Without the knowledge, asset or agreement of plaintiff Stauffer, the fence separating the leased premises from his property was taken up and moved a certain distance into a corn field, then being cultivated
by Stauffer's tenants. The cement foundations were laid, the boiler room floor constructed, and most of the superstructure of the building erected before Mr. Stauffer discovered what had been done to his land. An interview with Mr. Wineland resulted in a proposal or undertaking on Wineland's part to purchase, upon terms that would be satisfactory to Stauffer, that part of Stauffer's land covered by the building. Stauffer refused to enter into the proposed contract, when the same was presented to him, because of a clause therein which would permit Wineland to remove the building in case of a default in payments to be provided for in said contract.
The greater part of the materials used in the repair and reconstruction of the Cross Country Club building were furnished by the defendant Joplin Lumber Company under contract with Wineland; neither the plaintiff Burgess nor the plaintiff Stauffer was a party to such contract with the Joplin Lumber Company, nor did either of said plaintiffs have anything to do with arrangements for the reconstruction and repair of said building, nor did either of them contract for any of the materials or labor used in connection therewith, and neither of said plaintiffs had any knowledge, at the time the contracts were made by Wineland with the Joplin Lumber Company and other parties, that said building was to be constructed on said land. Under the lease from Burgess to Wineland, Wineland had a right to reconstruct said building or build any other improvements he desired on said land, the only condition being that such improvements should become a part of the real estate and belong to the plaintiff Burgess. But the plaintiff Burgess had nothing to do with the repair and reconstruction of said Club building, nor with the contract for same, and never, at any time, had any relationship, contractual or otherwise, with the defendant Joplin Lumber Company, the same situation was true relative to the plaintiff Stauffer.
Wineland having failed to pay the Joplin Lumber Company for the materials furnished by it under contract with him, said defendant Joplin Lumber Company caused to be filed in the office of the Clerk of the Circuit Court of Jasper County, Missouri, on June 7, 1937, an instrument purporting to be a mechanic's lien statement.
This instrument recited that the same was filed by the defendant Lumber Company with a view to avail itself of the benefit of the statutes on mechanic's liens for lumber and materials furnished under contract with the said Wineland "upon, to and for the erection and repair of a certain building or dance pavilion and lunch room described as follows: One frame building * * * consisting of dance hall, approximately 70' x 120', lounge room, approximately 40' x 32', entire building * * * located on the following leased premises * * * described as follows: Five acres in the Southwest (SW) corner of the Southeast Quarter (SE-1/4) of Section 19, Township 29, Range 33, also a part of the Southeast (SE) corner of the Southwest Quarter (SW-1/4) of Section 30, Township *Page 1007 
29, Range 33, all in Jasper County, Missouri."
Thereafter, on August 25, 1937, the defendant filed a suit in the Circuit Court of Jasper County, Missouri, being suit number 42535, and entitled, "Joplin Lumber Company, a corporation, plaintiff, v. Perry Burgess, Helen Noble Burgess and J. D. Wineland, defendants."
The petition in said suit alleged that Perry Burgess and Helen Noble Burgess were the owners in fee of certain real estate described as follows: "Five acres in the Southwest (SW) corner of the Southwest Quarter (SE-1/4) of Section 19, Township 29, Range 33, also a part of the Southwest (SW) Quarter of Section 30, Township 29, Range 33, all in Jasper County, Missouri." That J. D. Wineland was the owner of a certain leasehold right in and to the said real estate and improvements; that the said Wineland had entered into a contract with the said Lumber Company "for the furnishing of lumber and materials for the erection, construction and repair of a certain building or club house upon the real estate above described * * *. Said building consisting of one dance hall, approximately 70' x 120' and one lounge room, approximately 40' x 32' * * * and known as the Cross Country club * * *;" and that said Lumber Company "furnished for the erection, construction and repair of said building and improvements aforesaid, all lumber and materials * * * used in * * * said building and improvements." The prayer of the petition was for judgment against Wineland in the sum of $3,088.45, the amount claimed to be due for lumber and materials furnished, and that the said amount prayed for be adjudged a mechanic's lien against the building, described above, and the leasehold interest of Wineland in the said real estate and improvements aforesaid.
Summonses were duly issued in said suit for Perry Burgess, Helen Noble Burgess and J. D. Wineland; but as to Perry Burgess and Helen Noble Burgess, the Sheriff's return recited that: "Further executed this writ by making a due and diligent search from the 25th day of August, 1937, until the 20th day of Sept., 1937, and failing to find the within named defendants Perry Burgess and Helen Noble Burgess in my County. (in China)."
Wineland filed an answer in said suit. No further attempt was made by the defendant Lumber Company to secure service, either personal or constructive, upon Perry Burgess and Helen Noble Burgess, and, prior to the trial of said suit, said Joplin Lumber Company dismissed said suit as to both of said parties.
Thereafter, upon a trial of said suit, the Court found the issues in favor of the Lumber Company and against Wineland, rendering judgment in accordance with the prayer contained in said petition. On March 31, 1939, the defendant Lumber Company caused a special execution to issue upon the judgment so rendered against Wineland; and the Sheriff of Jasper County, acting under defendant's instructions, purported to levy upon all of Wineland's right, title and interest in and to the two rooms in said building as described in defendant's lien statement, petition, judgment and special execution. On April 12, 1939, and after due advertisement, said Sheriff held and conducted a pretended sale of that part of said building above described, and, at said sale, defendant became the purported purchaser thereof.
Plaintiff John L. Stauffer was not made a defendant in said mechanic's lien suit; nor did the Lumber Company's lien statement, petition, judgment, special execution or Sheriff's bill of sale contain a description of his land upon which the entire boiler room in said building is located and a part of the dance hall, which, on the west side thereof, extends 36.8 feet upon Stauffer's land, and, on the cast side thereof, extends 27.4 feet.
Immediately, and at the conclusion of said sale, the defendant prepared and threatened to enter upon the respective lands of the plaintiffs Perry Burgess and John L. Stauffer and to tear down and remove therefrom that part of the said Cross Country Club building which it had purportedly purchased at the sale, to-wit, the dance hall and lounge room. Whereupon, the plaintiffs Perry Burgess and John L. Stauffer filed separate suits praying that the defendant, its servants and agents, be temporarily enjoined from entering upon the respective lands of the plaintiffs and removing therefrom any part of the said Cross Country Club building located thereon, and that, upon a hearing thereof, the temporary restraining orders be made permanent; that the special execution in cause number 42535, under which the defendant proposed to act to plaintiff's injury, be quashed, and *Page 1008 
that the judgment in said cause be declared not to be a lien against the aforesaid building or any part thereof.
Temporary restraining orders were issued in Division Number Two of the Circuit Court of Jasper County as prayed in the plaintiff's petition in the respective suits; thereafter the cause was transferred, on application for change of venue filed by the plaintiff in each case, to Division Number One of said Circuit Court; after trial in said Division of said Court, the Court found in favor of the defendant in each case and against the plaintiff, and entered its decree dissolving the temporary restraining orders theretofore issued in said cases, declaring that the plaintiffs were not entitled to the relief prayed for.
It is from these decrees in said suits that these appeals are taken.
The appeal is presented to us under four assignments of error, but all of them go directly or indirectly to the one point, that is that the trial court erred in dissolving the temporary injunction and in refusing to permanently enjoin the restrain the defendant because the plaintiffs in these suits were not named in the proceedings to establish the mechanic's liens. It seems to be conceded that these plaintiffs were not named and that no service was had upon either of them in the attempted establishment of the mechanic's lien, and the evidence clearly shows that the reconstructed building when finished covered parts of the lands owned severally by the two plaintiffs in this action.
[1, 2] We deem it not necessary to write a lengthy opinion here, for since these improvements as constructed constitute one building or unit, and since the building as reconstructed extends to and upon lands owned by these plaintiffs, and since these plaintiffs were not made parties defendants in said mechanic's lien suit, no judgment could have been rendered affecting the right, title and interests of these plaintiffs in and to said building and real estate. In so far as these plaintiffs are concerned, all the proceedings under the establishment of the mechanic's lien and the foreclosure thereof are void and of no effect, and the trial court should have restrained the defendant from proceeding to sell these plaintiffs' interests under the void mechanic's lien. Under specific provisions of our statutes, it is provided that such as are not made parties to the proceedings shall not be bound thereby. See Sec. 3165, R.S.1929, Mo.St.Ann. § 3165, p. 4996; Sec. 3181, R.S. 1929, Mo.St.Ann. § 3181, p. 5010; and our courts have many times definitely so held, Watkins v. Mayer, Mo.App., 103 S.W.2d 566, 569; Quigley v. Rideout Co., Mo. App., 127 S.W.2d 37; Dezino v. William S. Drozda Realty Co., Mo.App., 13 S.W.2d 659; Platte City Benefit Assessment Road Dist. v. Couch, 320 Mo. 489, 8 S.W.2d 1003; Riverside Lumber Co. v. Schafer,251 Mo. 539, 158 S.W. 340, loc. cit. 342; Redlon v. Badger Lumber Co., 194 Mo.App. 650, 189 S.W. 589; Russell v. Grant, 122 Mo. 161, 26 S.W. 958,43 Am.St.Rep. 563; Landau v. Cottrill, 159 Mo. 308, 60 S.W. 64; Macklind Investment Co. v. Ferry, 341 Mo. 493, 108 S.W.2d 21.
[3] It is seriously contended here by the respondent, that the property sought to be removed under this mechanic's lien is only a part of the buildings and can be removed without affecting the parts of the building that were there prior to the improvements and that since such is the case, that it should not be held that such parts, which can be so removed, became a part of the real estate.
It may be said in answer to this contention that this is certainly a question of fact to be shown by evidence. We are not determining here whether such part could be so removed. That is a question we are not passing upon. We are simply holding that because of the possibility of such controverted issues, the mechanic's lien could not be established against Burgess and Stauffer until they had been served with process or legally notified. And that since this was not done, the mechanic's lien is void so far as they are concerned, and that as to them the Circuit Judge erred not so holding.
We are not holding that the Joplin Lumber Company could not acquire a lien upon the leasehold interest of J. D. Wineland. That is a question not before us for determination.
The judgment as to Perry Burgess and John L. Stauffer is reversed and the cause remanded with directions to enter judgment making the temporary injunction permanent, as to them.
TATLOW, P. J., and FULBRIGHT, J., concur.
 *Page 734