**DRILLING SERVICE CO., Plaintiff-Respondent,**

v.

Robert W. BAEBLER and Norma R. Baebler, Robert W. Baebler, d/b/a Robert W. Baebler Construction Co., Defendants,

Kienstra Supply Co. et al., Defendants-Cross-Claimants-Respondents,

Prudential Savings & Loan Association et al., Defendants-Appellants,

Franchi Construction Co. et al., Defendants-Cross-Claimants-Appellants and Respondents.

No. 55105.

Supreme Court of Missouri,
Division No. 1.

Aug. 25, 1972.

Joseph W. Toeniskoetter, St. Louis, for plaintiff-respondent, Drilling Service Co.

Charles M. Schmidt, Brackman, Copeland, Oetting, Copeland, Walther & Schmidt, Clayton, for defendant cross-claimants-respondents, General Elevator Engineering Co. and Kienstra Supply Co.

Rosenblum & Goldenhersh, James A. Greenblatt, Clayton, for defendant-respondent, Midwest Pool & Court Co.

Charles E. Roth, Clayton, for defendant-appellant, Riverview Stone & Material Co.

Charles E. Roth, Brackman, Copeland, Oetting, Copeland, Walther & Schmidt, Clayton, for defendant-respondent, Oliver T. Ahal.

Oliver F. Erbs, Kirkwood, for defendant cross-claimants respondents, Missouri Rolling Mill Corp. and Melcher-Schene Hardware & Lumber Co.

Bertram W. Tremayne, Jr., A. Wimmer Carr, Tremayne, Lay & Carr, Clayton, for defendants-appellants, Prudential Savings

**4**

& Loan Ass'n, Harold E. Bunting, W. Stewart Kenney, Security Title Co. and W. R. Barnes.

F. Wm. McCalpin, St. Louis, for defendant-appellant, Franchi Const. Co.; Lewis, Rice, Tucker, Allen & Chubb, St. Louis, of counsel.

BARDGETT, Judge.

This is an equitable mechanics lien case. The issues involve (1) the question of whether certain mechanics liens have priority over certain deeds of trust which were given as security for loans, (2) whether certain lien claimants complied with Chapter 429, V.A.M.S., in prosecuting their claims, (3) whether the trial court erred in entering a money judgment in favor of Franchi Construction Co. against Security Title Co. on the grounds that Security Title Co. breached an agreement with Franchi to issue a mortgagee policy of title insurance without exception as to mechanics liens, and (4) whether the trial court erred in concluding that lien claimant Oliver W. Ahal was entitled to a mechanics lien in the principal amount of $5,063.-28 or a lesser sum of $4,009.34.

The suit was brought by Drilling Service Co. seeking a judgment for work done at a development known as Norwood Court and for a mechanics lien on the land comprising Norwood Court and to declare said lien prior to four deeds of trust theretofore recorded on the land. Named as defendants who had filed mechanics liens, which defendants filed answers and cross-bills herein generally seeking the same remedy as the plaintiff, were Missouri Rolling Mills Corp., Melcher-Schene Hardware & Lumber Co., General Elevator Engineering Co., Oliver T. Ahal, Kienstra Supply Co., Midwest Pool & Court Co., Riverview Stone & Material Co., and N. B. West Contracting Co. U. S. Tennis Court Co. had filed a separate action seeking a lien on said real estate which was consolidated with this action and thereafter filed herein an answer and cross-bill seeking generally the same relief.

Robert W. Baebler and his wife were joined by plaintiff as defendants as owners of the land prior to their conveyance to Franchi Construction Co., and Robert W. Baebler, doing business as Robert W. Baebler Construction Co., was joined as a defendant as the general contractor of the work done by the lien claimants.

Franchi Construction Co. was joined as a defendant as holder of one of the deeds of trust and as a subsequent owner of the land; and it filed a cross-bill against defendant Security Title Co. for breach of a Construction and Disbursement Escrow Agreement, seeking relief for failure of Security Title Co. to issue to it a mortgagee title policy insuring its deed of trust without exception as to mechanics liens.

Prudential Savings & Loan Association and Harold E. Bunting, its trustee, were joined as defendants holding three deeds of trust on the property. W. Stewart Kenney was joined as a defendant as trustee of the deed of trust held by Franchi Construction Co. Security Title Co. and W. P. Barnes, Security's trustee, were joined because of a security agreement between Security Title Co. and Robert W. Baebler and his wife.

There were other parties to this action who are not mentioned because they have no interest in this appeal.

The judgments involved on this appeal are as follows:

Drilling Service Co. was granted a judgment for $11,998.24 against Robert W. Baebler, and a mechanics lien in aid of execution was granted against the entire tract, and said lien was declared prior to all four deeds of trust.

Kienstra Supply Co. was granted a judgment for $1,373.92 against Robert W. Baebler and a mechanics lien in aid of execution was granted against the entire tract and said lien was declared prior to all four deeds of trust.

Missouri Rolling Mills Corp. was granted a judgment for $1,245.19 against Robert

W. Baebler and a mechanics lien in aid of execution was granted against Tract C only and said lien was declared prior to all three deeds of trust on Tract C.

Melcher-Schene Hardware and Lumber Co. was granted a judgment of $332.60 against Robert W. Baebler and a mechanics lien in aid of execution was granted against the entire tract and said lien was declared prior to all four deeds of trust.

Oliver Ahal was granted a judgment for $6,253.15 against Robert W. Baebler and a mechanics lien in aid of execution was granted against all of the property except Tract B, and said lien was declared prior to all three deeds of trust.

General Elevator Engineering Co. was granted a judgment for $9,567.25 against Robert W. Baebler and a mechanics lien in aid of execution was granted against all of the property except Tract B, and said lien was declared prior to all three deeds of trust.

Midwest Pool and Court Co. was granted a judgment for $16,298.60 against Robert W. Baebler and a mechanics lien in aid of execution was granted against the entire tract and said lien was declared prior to all four deeds of trust.

N. B. West Contracting Co. was granted a judgment for $1,296.50 against U. S. Tennis Court Co. and a mechanics lien in aid of execution was granted against the entire tract and said lien was declared prior to all four deeds of trust.

Riverview Stone & Material Co. was granted a judgment for $1,148.86 against U. S. Tennis Court Co. and a mechanics lien in aid of execution was granted against the entire tract and said lien was declared prior to all four deeds of trust.

Franchi Construction Co. was granted a judgment against Security Title Co. on its cross-bill for $49,514.31, the total of mechanics liens adjudged against its real property. The judgment was granted Franchi on the basis of findings of fact

and conclusions of law to the effect that Security breached its agreement with Franchi by failing to issue to Franchi, as mortgagee, a title insurance policy without mechanics lien exception.

The appellants are: (1) Prudential Savings & Loan, Harold E. Bunting, W. Stewart Kenney, Security Title Co., and W. R. Barnes; and (2) Franchi Construction Co. (U. S. Tennis Court Co. filed its notice of appeal but withdrew the same on August 15, 1972.)

The property involved is a tract of land of approximately 26 acres located southwest of the intersection of Interstate 70 and Lucas and Hunt Road, lying mostly in the Village of Norwood Court, and partly in the Town of Normandy in St. Louis County, Missouri. This entire tract was conveyed to Robert W. Baebler from Erwin and Eleanor Vetter, husband and wife, by a single general warranty deed dated November 14, 1961, which was filed for record November 29, 1961. There was a plat attached to the original of the Vetter to Baebler sales agreement which divided the land into five Tracts designated A, B, C, D, and E, from Lucas and Hunt Road on the east to the west boundary of the property, but this plat was not recorded. The designation of these tracts was for two purposes: First, for convenience in purchasing the ground so that sections could be released as payments were made, and, second, for convenience in obtaining financing. There was no subdivision of the property of record. Tract A was designated for commercial development and two high-rise apartment buildings. Tracts B, C, D, and E, were designated for construction of apartment buildings in a court-form, and additionally Tract E, the westernmost tract, was also to include a recreational area for the use of the entire development.

Baebler originally intended to develop the entire project himself. The first work on the project began in May 1963 and continued without interruption until the sum-

mer of 1965. The first work done beginning in May 1963 consisted of rough and finished grading of streets, excavations for basements of all buildings, installation of storm and sanitary sewers, installation of all utilities and construction of all streets. This work was completed by September or October 1963 and prior to the actual building of the structures. Baebler obtained his first loan from Prudential, July 29, 1963, in the amount of $550,000. This loan was secured by a deed of trust on Tracts C, D, and E, which deed of trust was filed of record September 13, 1963. The proceeds of this loan were used for the work mentioned above on the entire property consisting of Tracts A, B, C, D, and E.

On October 10, 1963, Baebler obtained a second loan from Prudential in the amount of $1,450,000 which was secured by a deed of trust recorded October 14, 1963, on Tract B. This money was used to construct the apartments on Tract B.

Baebler obtained a third loan from Prudential, February 27, 1964, in the amount of $435,000 which was secured by a deed of trust recorded February 28, 1964, on Tracts A, C, D, and E. The proceeds of this loan were used for paying an earlier deed of trust not involved here and for loan commissions, taxes, and subdivision improvements.

Baebler obtained his fourth loan from Franchi Construction Co. on March 25, 1965, in the sum of $300,000 and this was secured by a deed of trust recorded March 26, 1965, on Tracts A, B, C, D, and E, inferior to the prior deeds of trust in favor of Prudential. The proceeds of this loan were used to complete the apartments on Tract B.

Security Title Co. acted as escrowee for disbursement of the proceeds of all four loans mentioned above and the loan proceeds were disbursed pursuant to "Construction and Disbursing Escrow Agreement" entered into between Baebler, Prudential, and Security Title Co., concurrent with the loans made to Baebler by Pruden-

tial, and a similar agreement was made between Baebler, Security, and Franchi on the fourth loan. Baebler remained the fee owner of the entire 26 acres until he and his wife conveyed it to Franchi Construction Co. by deed dated July 27, 1965, recorded August 6, 1965. Security Title and Prudential's evidence was that out of the original $500,000 loan made by Prudential to Baebler, Prudential paid $307,000 direct to Clayton Bank to pay off existing notes of deeds of trust on the property and $189,823.25 was disbursed by Security Title for subdivision improvements, site work, sewers, streets, grading, some commissions, disbursing fees, certificate of title, and a mortgage policy, and this work covered the entire area of so-called Tracts A, B, C, D, and E.

All of the work done by the lien claimants in this case was performed in 1965. The first deed of trust securing the first loan from Prudential to Baebler was recorded September 13, 1963, and the last of the four deeds of trust (the one securing the loan from Franchi Construction to Baebler) was recorded March 26, 1965. None of the work for which liens are claimed went into any of the construction involving grading, streets, water and gas mains, storm and sanitary sewers, all of which was completed in October 1963, nor did any of the work for which liens are claimed go into the construction of the apartments on Tract B, which commenced shortly thereafter and was completed about May 1, 1965. All of the work for which liens are claimed was done on so-called Tracts C or E, which was part of the total property consisting of Tracts A, B, C, D, and E, upon which original work consisting of grading, constructing, streets, installing all water and gas mains, storm and sanitary sewers, and the excavations for basements was performed.

The first issue to be decided is whether the trial court erred in granting priority to the mechanics liens over the four deeds of trust. The trial court made extensive findings of fact and conclusions of law.

Those relevant to the issue of priority of the liens over the deeds of trust are as follows:

"2. The tract of ground which is the subject of the action encompasses an area of approximately 26 acres and lies at the southwest corner of the intersection of Interstate Highway 70 and Lucas and Hunt Road. At different times and in various documents the parties divided the entire 26 acre tract variously denominating the portions thereof as Parcel No. 1 and Parcel No. 2, or as Tracts, A, B, C, D, and E. There was no subdivision of the property of record. Any division of the property was done merely for the convenience of the parties in financing and otherwise dealing with the property;

"3. The entire 26 acre tract of ground is located in incorporated areas, part lying in the Town of Norwood Court and the remainder in the Town of Normandy;

"4. The entire tract is improved with streets, sewers, water lines, other facilities for public utilities and some grading. On that portion of the overall tract which has sometimes been designated Tract B there have been constructed thirteen (13) brick buildings in which are a total of 108 apartment units. On so-called Tract E, there are a swimming pool, tennis courts and a shuffleboard game. These recreational facilities were developed simultaneously with the existing apartments and were intended for the use of the residents of those and other apartments which were contemplated but not built;

"5. The entire 26 acre tract was intended to be developed as one project under the name of Norwood Court Apartments;

"6. Between November 14, 1961 and August 6, 1965 the tract of ground was owned and developed by Robert W. Baebler who with his wife, Norma A. Baebler, are defendants in this action;

"7. Under date of July 29, 1963, the said Robert W. Baebler borrowed $550,000.00 from Prudential Savings and Loan Association on his promissory note secured by a Deed of Trust executed by him and his wife conveying so-called Tracts C, D, and E to a Trustee for the savings and loan association. A portion of the loan proceeds was used as part purchase money for the tract and the remainder was used for construction purposes;

"8. On October 10, 1963, the said Robert W. Baebler borrowed $1,450,000.00 from Prudential Savings and Loan Association on his promissory note secured by a Deed of Trust executed by him and his wife conveying Tract B to a Trustee for the savings and loan association. The entire proceeds of this loan were intended to be used for the construction of the buildings and apartments on so-called Tract B;

"9. On or about February 27, 1964, the said Robert W. Baebler borrowed $435,000.00 from Prudential Savings and Loan Association . . . secured by a Deed of Trust . . . conveying the entire tract except for Tract B to a Trustee for the savings and loan association. A portion of the proceeds of this loan was used as part purchase money for the tract of ground and the remainder was used for construction purposes;

"13. Under date of March 25, 1965, the Baeblers borrowed $300,000.00 from Franchi Construction Co., Inc., . . . secured by a Deed of Trust executed by them conveying the entire 26 acre tract to a Trustee for the benefit of Franchi. The proceeds of this loan were used for construction purposes. . . ."

Conclusion of Law No. 4 was that, "The mechanics liens hereinafter found are superior to and take precedence over the several deeds of trust and the security agreement covering all or any portion of the property. . . ."

Prudential contends that the Findings of Fact Nos. 4, 5, and 6, to the effect that Baebler intended to develop the entire tract as one project, do not support the Conclusion of Law No. 4 that the mechanics liens

are superior to and take precedence over the deeds of trust.

Prudential's rationale for this position is that it was not the intent of any of the parties to these loans that the proceeds thereof would be used for any of the work or materials which are the subject of these liens; that the record is specific that the proceeds of these four deeds of trust were intended to be used, and were in fact used, for construction other than that performed by the present lien claimants; that all or almost all of the proceeds of these loans were paid out before any of the lien work was begun or the materials furnished; that the deed of trust holders (Prudential and Franchi) were not otherwise related to the work or materials of the lien claimants so as to give rise to the doctrine of waiver; that the deed of trust holders did not take any action to encourage the development of the tract by a structure of any kind, and that there is no evidence in the record to support a finding that any of the lien claimants involved in this appeal could have anticipated payment from the proceeds of any of the four loans.

Additionally, Prudential asserts that the court should consider the economic impact of a holding that the liens are superior to the deeds of trust upon construction lenders in that a construction lender should not have to risk his priority as against lien claimants who have worked on later phases of the work.

The trial court found that "the entire 26 acre tract was intended to be developed as one project under the name Norwood Court Apartments".

Prudential paraphrases this finding and contends that the trial court's finding "to the effect that Baebler intended to develop the entire tract as one project" does not support the trial court's conclusion of law that the mechanics liens are superior to and take precedence over the deeds of trust.

The trial court's finding about which Prudential complains cannot be so isolated so as to make it appear that a mere un-communicated personal intent of the owner, standing alone, is sufficient to cause the mechanics liens to be superior to Prudential's deeds of trust. The overwhelming evidence in this case was that Prudential was fully aware from the outset that the 26-acre tract was being developed as one project. Indeed, the proceeds of the first loan Prudential made to Baebler on July 29, 1963, was admittedly disbursed by Prudential's agent and escrowee, Security Title, for site improvement on all five Tracts—A, B, C, D, and E,—which comprised the entire 26 acres. The site improvements commenced in May 1963, well prior to the date the first deed of trust was recorded on September 13, 1963. These site improvements consisted of grading the entire acreage, installing all streets, storm and sanitary sewers, water and gas mains, as well as excavation for all the buildings, all of which was completed in September or October 1963. The work on the project was continuous from May 1963 to the summer of 1965; that is to say, it was continuous from the beginning through the period of time during which the lien claimants performed work and supplied material and was not at any time abandoned.

■ The trial court's finding that the entire 26-acre tract was intended to be developed as one project was supported by substantial evidence and not erroneous.

Lien claimants contend that under § 429.060, V.A.M.S.1969, their liens for work and materials are superior to the four deeds of trust.

Sec. 429.060 provides: "The lien for work and materials as aforesaid shall be preferred to all other encumbrances which may be attached to or upon such buildings, bridges or other improvements, or the ground, or either of them, subsequent to the commencement of such buildings or improvements."

This statute has been part of the Missouri law since at least 1855. R.S.Mo.1855,

§ 8 at 1067. Its application in Missouri and similar statutes in other states has brought into existence a concept known as the "first spade rule". In Schroeter Bros. Hdw. Co. v. Croatian "Sokol" G. Ass'n, 332 Mo. 440, 58 S.W.2d 995, 1003, this court said, "The theory of this rule is that 'the fact of the improvement gives its own notice to all the world.' Hydraulic Press Brick Co. v. Bormans, 19 Mo.App. [664], loc. cit. 669; and that it 'works no injustice to anyone dealing with the property, as the work itself is notice to all of the mechanics' claims. It enables them by occular examination to ascertain whether they can do so [buy or take a mortgage] safely,' Wentworth v. Tubbs, 53 Minn. 388, 55 N.W. 543, 544."

This rationale is recognized by Prudential in its brief. It is clear that the function of § 429.060 is that of giving notice to a prospective lender that at the time the loan is made there are in existence materialmen and laborers who expect to be paid and that there will likely be additional materialmen and laborers who will also contribute to the construction or improvement, already begun, and who will also expect to be paid. In the instant case Prudential made its initial loan to Baebler (owner and contractor) after substantial work was begun and at a time when Prudential was aware of the total project being built.

In H. B. Deal Const. Co. v. Labor Discount Center, Inc., Mo., 418 S.W.2d 940, 951, when speaking of the "first spade rule", the court stated: "A mechanic's lien properly filed dates from the commencement of the building or improvement, § 429.060, or as stated in Riverside Lumber Co. v. Schafer, 251 Mo. 539, 158 S.W. 340, 'from the commencement of the work on the building, or the furnishing of the materials therefor.' The commencement of the building or improvement, under the 'first spade rule' which we recognize in this state, Schroeter Bros. Hdw. Co. v. Croatian 'Sokol' G. Ass'n, 332 Mo. 440, 58 S.

W.2d 995, 1003, means the visible commencement of actual operations on the ground for the erection of the building or the making of the improvement which makes it apparent that a building has been commenced or that an improvement is to be made, done with the intention and formed purpose to continue the work until completed. 36 Am.Jur. Mechanics' Liens § 167; 57 C.J.S. Mechanics' Liens § 179, p. 732. Boisot on Mechanics' Liens (1897) § 56, says the building is begun 'when the first permanent work is done on the land' such as excavation for the foundation, or attaching to the land any material used in constructing a building, or 'when the permanent work on the ground has progressed so far as to inform reasonable observers that it is designed for the erection of a building,' or 'the first labor done on the ground which is made the foundation of the building, and is to form part of the work suitable and necessary for its construction,' but that ' * * * *laying off the ground for buildings and driving pegs in the ground to mark the location does not constitute a commencement of the building.* Neither does clearing the ground of stumps and other obstructions, that would render insecure the foundations to be built, * * *.'"

Baebler, as contractor and owner, Prudential as mortgagee, and Security Title as escrowee, entered into a "Construction and Disbursing Escrow Agreement" contemporaneously with the first Prudential loan of July 29, 1963, in the amount of $550,000. This three-party escrow agreement obligated Baebler "to build and fully complete improvements according to plans and specifications and building content heretofore submitted to Escrowee". It recites that "A copy of all plans, specifications and building contracts between the parties are hereto deposited with the Escrowee contemporaneously with the signing of this agreement." The mortgagee (Prudential) authorized escrowee (Security Title) to disburse all funds according to the terms of the agreement and authorized escrowee, as its agent, to receive payment on the deed

of trust maturing during the construction of said improvements. This agreement contains 46 covenants and repeatedly refers to various obligations with respect to mechanics liens.

Prudential does not contend that escrowee, Security Title, made any disbursements that were not in conformity with the Construction and Disbursing Escrow Agreement; and Prudential admits that the disbursements made by escrowee were for material furnished and work performed on the entire 26-acre tract. This work, for brevity, called "site improvements", in fact consisted of grading the acreage, installing all streets, storm and sanitary sewers, water and gas mains, installation of all utilities for the buildings and excavations for basements of all the buildings.

The second loan of October 10, 1963, and the third loan of February 27, 1964, from Prudential to Baebler were for construction to be done as part of and in furtherance of the overall project, and each loan was accompanied by a Construction and Disbursing Escrow Agreement similar in form and content to the first.

Prudential and Security Title do not contend that they had no knowledge of the total project nor do they claim that the project was to be developed in any way other than "one project". Indeed, the consistent course of conduct on the part of Prudential in making the three loans clearly demonstrates that Prudential was fully aware of the unitary aspect of the development and that Prudential was looking to the building to be built as the real security for the loans.

In their brief, Prudential and Security Title admit that "Construction of the subdivision improvements on the development and the apartments on Tract B were financed by the three separate loans made by Prudential . . . and one loan made by Franchi Construction Co. . . .", and at another place in their brief it is stated that "Baebler, as general contractor and owner, started the development and

Baebler intended to do the entire development himself. . . . "

In the instant case, substantial work was in progress on July 29, 1963, when Prudential made its first loan to Baebler, as well as on September 13, 1963, when Prudential recorded its first deed of trust. It was not merely the laying off of the ground, or driving pegs to mark the location of future buildings. It was permanent work on the ground that would inform any reasonable observer that an entire project consisting of many buildings had begun. The application of § 429.060 to this case dictates that the three deeds of trust held by Prudential and the fourth deed of trust held by Franchi be subordinated to the liens of the mechanics lien claimants.

Even apart from the "first spade rule", the doctrine of waiver leads to the same conclusion. In H. B. Deal Const. Co. v. Labor Discount Center, Inc., supra, 418 S.W.2d 940 the court said, loc. cit. 952: "Under the doctrine of waiver a mortgagee by reason of having induced the furnishing of labor and material may be precluded from asserting the priority of the mortgage over a mechanics lien. 57 C.J.S. Mechanics' Liens § 204b(1), p. 768." In the instant case Prudential not only knew of the entire project but provided the money with which it was to be built. The Construction and Disbursing Escrow Agreements entered into by Baebler, as owner and contractor, Prudential, as mortgagee, and Security Title, as escrowee, setting forth the duties, rights and obligations with reference to the disbursement of the loans, the construction of the buildings, and the rights of mortgagee clearly show that Prudential not only had actual knowledge that buildings were to be constructed on the acreage, but also that Prudential knew that the employment of subcontractors and workmen was contemplated, and that mechanics and materialmen whose labor and materials were to create the improvements might be expected to file mechanics liens against the property if their bills were not paid. Here, as in H. B. Deal, *supra,* Pru-

dential had much more knowledge about the planned construction than it would have had if its officials had merely visually observed the streets, utilities, gas and water mains, sewers and excavations for the basements (which constituted the commencement of the improvement and which was in existence prior to the recording of Prudential's first deed of trust).

Under these circumstances Prudential is in no position to insist upon the subordination of the liens of the mechanics and materialmen and is taken to have waived any claim of priority. H. B. Deal Const. Co. v. Labor Discount Center, Inc., supra.

Prudential points out that the lien claimants here involved did no work nor furnish any material with respect to the "site improvements" nor did they participate in any of the buildings on Tract B; that all four deeds of trust were recorded prior to April 22, 1965, when the first work was done by any lien claimant on Tract C, and that the earliest work done on the swimming pool and tennis courts (Tract E) was on June 6, 1965. On this basis, Prudential contends that the "first spade rule" as to Tract C occurred on April 22, 1965, and on Tract E on June 6, 1965, and argues that as to these mechanics lien claimants, all four deeds of trust were recorded prior to the time that the first work was done on Tracts C and E by anyone and prior to the time that these claimants did any work for which the lien is claimed. Prudential desires to restrict the application of the "first spade rule" to that particular building or that particular construction for which Prudential made a given loan and asserts that unless its theory is adopted the economic impact would be to discourage loans in Missouri by several lenders on different parts of a project and would require that a lender look past the construction he is lending money on to any possible construction the owner may undertake in the future within the perimeter of the total project and judge his security accordingly. In short, Prudential poses the issue by asking the question, "Does he [lender] risk his priority as against lien claims of contractors who have worked on later phases of the work, if he [lender] decides to participate in the first phase only?"

Prudential further asserts, "In this case the lenders participated in two phases of *this* project." (Emphasis ours.) In asserting its position, it would appear that, at least inferentially, Prudential agrees that *the project*—the improvement—was a unitary one and known to be such by Prudential, but seeks to divide the improvement into *phases* for the purpose of obtaining a priority based on a *phase* of the improvement and to ignore the unitary aspect of the improvement. The law does not allow the rights of mechanics lien claimants to be so restricted.

Prudential suggests that the lender has priority over the mechanics lien holder if the lender in making its loan to the owner restricts the use of the money loaned to an early or particular phase of the work. Thus it is apparently suggested that if a lender were to loan money to a builder for the purpose of excavating for construction of a basement of a 50-story building and, in its loan agreement, restricted the use of its funds to the construction of the basement, then a mechanics lien arising from the roofing work, and accruing wholly after the basement was completed, would be subordinated to the lender's deed of trust taken as security for the loan to construct the basement. Such a construction of our mechanics lien laws would do violence to the very terms of § 429.060 and would be contrary to the prior holdings of the courts of this and other states that "A mechanic's lien properly filed dates from the commencement of the building or improvement." H. B. Deal Const. Co. v. Labor Discount Center, Mo., 418 S.W.2d 940, 951. Or, as stated in Schroeter Bros. Hdw. Co. v. Croatian "Sokol" G. Ass'n, 332 Mo. 440, 58 S.W.2d 995, 1003, "The man who does the last of the painting or plumbing comes in pari passu with him who built the foundation wall."

The law makes no distinction between improvements that are vertical, as in our example, and improvements that are horizontal, as in the instant case. The lender that takes a deed of trust to secure his loan made to finance the early stages of the improvement does run the risk of his security becoming impaired by mechanics liens resulting from work done or material furnished in connection with later stages of the same improvement. Sec. 429.060, V.A.M.S.; H. B. Deal, *supra*, and Schroeter Bros., *supra*. This is not to penalize an early lender but is for the purpose of securing to those persons who supply labor and material to the improvement of the rights which the mechanics lien laws afford to them.

In the instant case Baebler was the owner-contractor from the time he acquired the 26-acre tract in 1961 until Baebler and his wife conveyed the fee to Franchi by deed recorded August 6, 1965. The work begun by Baebler in May 1963 continued without interruption or abandonment throughout the time during which the instant mechanics lien claimants worked on and supplied material to the project. The project was a singular one and the work done by the mechanics lien claimants was within the scope of the project as it was originally planned. In H. B. Deal, *supra*, the holder of the deed of trust contended that the claims of two mechanics lien claimants should be subordinated to the deed of trust "because the deed of trust was recorded prior to the time said cross-claimants began work as independent contractors, and disbursements under the deed of trust were made before said cross-claimants began work as independent contractors." The court in rejecting this contention held, 418 S.W.2d 940, loc. cit. 957: "There was no abandonment of the work, or break or cessation in the making of these improvements; there was a continuous flow of events from beginning to end. Under the doctrine of waiver, which we have held fully applicable in this situation, the court did not err in adjudging these mechanics' liens prior and paramount to the lien of the deed of trust. The fact that the incinerator was not included in the original plans on which the loan was made does not bar Magary's claim."

In the instant case the work performed by lien claimants was all within the scope of the original plans which were fully known to Prudential from the outset. Consequently, under both the doctrine of waiver, as well as the "first spade rule", the trial court correctly held the mechanics liens superior to the four deeds of trust.

The fact that the mechanics lien claimants did not perform work on the project until after all four deeds of trust were recorded does not cause the instant mechanics liens to be subordinated to these deeds of trust. This is so because a mechanics lien properly filed dates from the commencement of the building or improvement. Sec. 429.060, V.A.M.S.; H. B. Deal Const. Co. v. Labor Discount, *supra*, loc. cit. 951; Riverside Lumber Co. v. Schafer, 251 Mo. 539, 158 S.W. 340; Schroeter Bros. Hdw. Co. v. Croatian "Sokol" G. Ass'n, *supra*. The commencement of the improvement in this case occurred in May 1963 and the improvement thus commenced was as to the entire project which project was not abandoned, altered, or interrupted from its commencement through the period during which the instant mechanics lien claimants performed their work.

Prudential, Security Title, and Franchi Construction contend the court erred in granting a lien in aid of execution to Riverview Stone & Material Co., hereinafter Riverview, and Midwest Pool and Court Co., hereinafter Midwest, contending that Franchi Construction Co. was not served with process by either lien claimant and therefore there was no commencement of the action within the meaning of Civil Rule 101.15, V.A.M.R., and proceeding without unnecessary delay by either of these lien claimants as is required by § 429.170, V.A.M.S.

Franchi was a necessary party to this equitable mechanics lien action as it became the record owner of the property August 6, 1965. This original equitable suit was instituted January 26, 1966, by Drilling Service Co., who caused all parties to be properly served with process, including Franchi, Prudential, Riverview, and Midwest. Riverview filed its answer and cross-bill on March 29, 1966. On March 30, 1966, the following memorandum was filed by Franchi: "Lewis, Rice, Tucker, Allen & Chubb and F. Wm. McAlpin and Lawrence A. Waldman, enter their appearance for Defendant Franchi Construction Co. Said Defendant granted thirty (30) days from this date in which to file pleadings responsive to the petition and all cross-bills seeking relief against it." The trial court found Riverview made no attempt to serve its cross-bill on Franchi until April 17, 1967.

The trial court found that Midwest filed its cross-bill on April 22, 1966, but did not name Franchi as a party-defendant and no summons was issued for service on that defendant; that during a large portion of the ensuing year the cross-bill of Midwest was not physically present in the court file; that Midwest made no attempt to serve its cross-bill on Franchi until April 27, 1967, the day following a pretrial conference conducted by the court in this case; that on April 27, 1967, Midwest inserted a copy of its answer and cross-bill in the court file as filed April 22, 1966, and simultaneously served a copy of the same on Franchi.

Both claimants had properly filed their mechanics lien accounts prior to the institution of the action by Drilling Service Co., and both claimants filed answers and cross-bills within six months after filing their liens.

Prudential and Franchi in their original brief relied principally on the provision of § 429.170 in support of their position against a lien being granted to Riverview and Midwest. After briefs were filed, this court decided the case of Peerless Supply Co. v. Industrial Plumbing & Heating Co., Mo., 460 S.W.2d 651, which was an equitable mechanics lien case and involved questions similar to those in the instant case. The parties in the instant case were invited to submit post-hearing memoranda in view of Peerless, *supra,* and some did so.

Here, as in Peerless, the original equitable mechanics lien suit was properly instituted by plaintiff and service was obtained on all necessary parties, including Prudential and Franchi, in accordance with the provisions of § 429.170. This is admitted by appellants. In Peerless this was held to constitute the "commencement of the action."

■ As to the procedure applicable to defendants-cross-claimants in an equitable mechanics lien action, the provisions of § 429.310 are controlling and do not require cross claimant to obtain service of process upon a defendant against whom cross claimant seeks relief if cross claimant does not seek new or different relief as to that defendant from that relief sought by plaintiff. Peerless, *supra,* loc. cit. 662.

In the instant case Riverview and Midwest did file their answers to plaintiffs' petition and cross claims within the six-month period provided for in § 429.310 which is the statutory provision applicable to cross claimants in equitable mechanics lien suits. Peerless, *supra,* loc. cit. 660.

It is here argued that the claim for relief asserted in the cross claim of Riverview and Midwest was different in that the relief sought in the cross-bills was that the rights of all claimants be determined and enforced without any request for priority as between mechanics lien claimants, whereas plaintiff Drilling Service's petition sought priority over other mechanics liens in addition to its prayer that the "court determine the rights of all parties interested in or having a lien or claim against said property. . . . "

This contention is overruled. It is clear that the relief sought by cross claimants as to Prudential and Franchi was the same as the relief sought by plaintiff against Prudential and Franchi, to wit: a mechanics lien against the fee title of all of the described property and all improvements thereon. Priorities as between mechanics liens would constitute issues between the mechanics lien claimants but not between mechanics lien claimants and Prudential or Franchi.

In its post-hearing memorandum, Franchi says that, "The issue here is the service not so much of process, but of a pleading under Civil Rule 43.01," and contends that Rule 43.01 was not complied with by Riverview and Midwest because neither of these two lien claimants served a copy of their pleadings on Franchi as required by that rule.

It is true that a copy of the Riverview cross claim, although filed March 29, 1966, was not forwarded to Franchi until April 17, 1967; and a copy of the Midwest cross claim, although filed on April 22, 1966, and thereafter lost from the court file, was not forwarded to Franchi until April 27, 1967.

On May 1, 1967, Franchi moved to dismiss the cross-bills of Riverview and Midwest alleging that Franchi, as the owner of the property, was a necessary party and that neither cross claimant served or attempted to serve Franchi with a copy of said cross claimants' cross claims and, therefore, cross claimants have lost their right to a lien upon the property of Franchi.

The court took Franchi's motions to dismiss with the case and, without waiving its motions to dismiss, Franchi filed its answer to the cross claims of Riverview and Midwest. The cause proceeded to trial on May 1, 1967, at the conclusion of which the court entered judgment in favor of Riverview and Midwest, as stated supra, and granted each of them a lien upon all of the subject property. The court in its judgment and decree overruled Franchi's motions to dismiss referred to above.

Civil Rule 43.01 applies to equitable mechanics lien actions and there is nothing in Peerless, *supra,* to indicate the contrary, and both Midwest and Riverview should have forwarded copies of their cross claims to Franchi. The issue, as put by Franchi, is "what shall be the sanctions or penalty for failure to follow this rule". Franchi, of course, suggests the sanction or penalty must be the loss of the mechanics lien. This was the sole relief sought by Franchi in the trial court and the trial court denied that relief.

Franchi did not claim or prove that it was surprised by the cross claims of Midwest or Riverview nor did it claim to be prejudiced in the trial of this cause by not receiving copies of the cross claims on time. It sought no continuance or any relief other than dismissal of the cross claims. In its post-hearing memorandum, Franchi states that, during the 15 months this action was pending in the trial court, there were several meetings of claimants' counsel and meetings of all counsel with the several different judges in whose division the case was pending, and there was considerable activity which resulted in the dismissal of more than half the claims. Although Franchi notes that it was at the pretrial conference of April 27, 1967, that the absence of the Midwest cross claim from the file and the failure to serve same on Franchi "became apparent", there appears to be no contention by Franchi, either in the trial court or here, that it did not know that the cross claims of Riverview and Midwest had been filed and were being pressed. Indeed it rather appears from the transcript of the trial and the statements of the parties in their briefs and memoranda that Franchi knew of the pendency of these cross claims; that they were to be litigated, and that settlement activity prior to trial was engaged in by Franchi with reference to these as well as the other claims.

It is clear that the trial court had jurisdiction of the claims of Midwest and Riverview because both parties complied with § 429.310, and the failure of Midwest and Riverview to serve copies of their cross-bills on Franchi did not divest the court of jurisdiction.

There is no evidence, or for that matter any claim, that the failure to forward copies of the Midwest and Riverview cross-bills to Franchi caused any delay, much less unnecessary delay, in the prosecution of this action. Nor is there any evidence or claim that Franchi was prejudiced by not receiving copies of subject cross-bills.

█ The trial court overruled Franchi's motions to dismiss the cross-bills of Midwest and Riverview. As stated in Peerless, supra, 460 S.W.2d 651, loc. cit. 663, "The learned judge's intimate knowledge of all aspects of this suit allowed him a far more advantageous position to make a judgment in this regard. Unless a clear abuse of discretion is shown we are required to defer to his judgment." There has been no abuse of discretion shown.

The court has considered the cases of Continental Electric Co. v. Ebco, Inc., Mo., 375 S.W.2d 134; Hennis v. Tucker, Mo. App., 447 S.W.2d 580; and Kinnear Mfg. Co. v. Myers, Mo.App., 452 S.W.2d 599, cited by Franchi. These cases were also considered by the court in Peerless Supply Co. v. Industrial Plumbing & Heating Co., *supra*. There is no conflict between the cited cases and Peerless and we hold that Peerless, *supra,* controls the instant case.

Franchi was granted a judgment against Security Title Co. on Franchi's cross-bill for $49,514.31, the total of the mechanics liens plus interest thereon, adjudged against its real property. This judgment was granted to Franchi on the findings and conclusions of the trial court that Security breached its agreement with Franchi by failing to issue to Franchi, as mortgagee, a title insurance policy without mechanics liens exception.

Security Title appeals from this judgment asserting that there was no evidence in the record to show that Franchi has sustained, or will sustain, any loss for which Security is obligated. Security submits that this judgment should be reversed and instead a judgment entered ordering Security to issue the policy called for by the Agreement.

Franchi loaned Baebler $300,000 which was secured by a deed of trust dated March 25, 1965, in favor of Franchi, and recorded on March 26, 1965. This deed of trust was given on Tracts A, B, C, D, and E. The proceeds of this loan were to be used to complete apartments on Tract B.

Security acted as escrowee for disbursement of the proceeds of this loan and, on March 26, 1965, Baebler (contractor-owner), Franchi Construction Co. (mortgagee), and Security Title (escrowee) entered into a Construction and Disbursing Escrow Agreement. The property described in this agreement is the same as described in the deed of trust dated March 25, 1965, and consists of so-called Tracts A, B, C, D, and E.

Escrowee covenanted and agreed "to make an examination of the title of said property and report the condition thereof to Mortgagee on a form known as 'Commitment to Insure' of Kansas City Title Insurance Company showing defects and liens against said property [to be eliminated or removed before issuance of Mortgagee's policy of title insurance,] as well as such exception as will appear under Schedule B of said Mortgagee's policy of title insurance as finally issued. After completion of said improvements in accordance with the terms hereof, Mortgagee's policy of title insurance will be issued, without exception as to mechanic's liens." (Brackets are ours and the words appearing between brackets were crossed out on the agreement and do not form a part thereof.)

The proceeds of this $300,000 loan was paid by Franchi to Security under the

terms of the Agreement, supra, executed March 26, 1965. Security, as escrowee, disbursed these funds and included in the disbursements was a payment to itself, Security, of $1,325 for the premium on a mortgagee's title insurance policy, which policy it was obligated to issue under the terms of the disbursing agreement of March 26, 1965.

Security, as escrowee, was obligated by the disbursing agreement of March 26, 1965, to make an examination of the title to the property (Tracts A, B, C, D, and E) and to report the condition thereof to Franchi, mortgagee, *and* to do so on a specific form known as "Commitment to Insure" of Kansas City Title Insurance Co., *and,* thereafter, upon completion of the buildings and improvements on Tract B, to issue *mortgagee's title insurance policy without exception as to mechanics liens.*

Nevertheless, Security did not make the required examination of the title to the property (Tracts A, B, C, D, and E), nor report the same on the form prescribed, nor issue the mortgagee title insurance policy required by the Agreement.

The obligation undertaken by Security was with respect to a *mortgagee* policy insuring Franchi, as mortgagee, on its $300,000 loan, and not an *owner's* title insurance policy. The issues here are determined without regard to the fact that Franchi eventually became the owner of the property but on the basis that Franchi is a mortgagee. It is recognized that the effect of the trial court's judgment in favor of Franchi, if paid by Security, and applied by Franchi toward the mechanics liens found by the court to exist against the property is to not only clear the deed of trust held by Franchi of these encumbrances, but also to clear the title held by Franchi of these encumbrances. Nevertheless, Franchi is entitled to enforcement of its right under the Disbursing and Escrow Agreement in its position as mortgagee. The mortgage has not been released.

The mortgagee's policy of title insurance that Security was obligated to issue was not in evidence and, therefore, the particulars of such a policy were not known to the trial court and are not known to this court.

Security agrees that the terms of the Construction and Disbursing Escrow Agreement obligated it to issue its mortgagee policy of title insurance in favor of Franchi, without exception as to mechanics liens. The trial court in its findings of fact found, inter alia, that Security did not examine the title to the property described in the Agreement of March 26, 1965, or report the condition thereof to Franchi on a particularly described form known as "Commitment to Insure", and that Security never did issue to Franchi a mortgagee's policy of title insurance without exception as to mechanics liens. The court entered its conclusions of law, inter alia, that the Agreement of March 26, 1965, was a valid and binding contract among Baebler, Franchi, and Security; that Franchi performed all of its obligations under the Agreement; that the Agreement required Security to insure Franchi against mechanics liens as to the entire 26-acre tract; that Security breached the agreement by (a) failing to issue to Franchi a mortgagee policy of title insurance without exception as to mechanics liens, and (b) by disbursing funds supplied by Franchi under the Agreement, and held by Security in escrow, for purposes other than those contemplated by the Agreement; that Franchi was damaged by said breaches in an amount equal to the mechanics liens herein adjudged and decreed on all or any portion of the 26-acre tract, and there was no merger of the interest of Franchi under the deed of trust dated March 25, 1965, and the general warranty deed recorded August 6, 1965.

Security Title, on this appeal, does not contest the findings of fact or conclusions of law except that finding and conclusion wherein the court held that Franchi was *damaged* by the breach of the Agreement

by Security. Security urges this court to reverse the trial court's ruling granting Franchi a money judgment and enter a judgment ordering Security to issue the policy called for by the Agreement.

Security urges this course of action on its premise that Franchi was not damaged because there has been no loss to Franchi, the mortgagee, because, according to Security, the only time Franchi, the mortgagee, could sustain a loss would be if the real estate is sold on execution or foreclosure and did not bring enough money to satisfy the mechanics liens and deeds of trust. Security also argues that Franchi had the burden of proof as to what Security's liability under the mortgagee title insurance policy would have been had a loss been sustained and had the policy been in effect.

The record shows that throughout this litigation Security has never come forward with the mortgagee's title insurance policy it was obligated to issue to Franchi. At the same time Security seeks to avoid liability to Franchi on its (Security's) breach of the Agreement of March 26, 1965, on the basis that the court cannot determine what Security's liability would have been under the policy because the policy is not in evidence.

 The breach of the March 26, 1965, Agreement was clearly proven and, in effect, admitted by Security. If the terms of the policy that Security was obligated to issue would have narrowed its liability to something less than was evidenced by the terms of the March 26, 1965, Agreement found by the court, Security had the opportunity at trial to produce the Agreement, but chose not to do so. This evidence was particularly within the control of Security and, having failed to produce it, Security cannot benefit from its own choice not to bring the policy before the court, nor from its own breach of the Agreement in failing to issue the policy.

Security speculates in its brief on what the terms and provisions of the mortgagee's policy of title insurance might be.

The court is not construing a mortgagee's title insurance policy in this appeal and will not indulge in speculating on that matter.

Item 34 of the Construction and Disbursing Escrow Agreement of March 26, 1965, obligated Security to issue to Franchi, as mortgagee, a "Commitment to Insure". The language of the printed form of the March 26, 1965, Agreement requires that the Commitment to Insure show "defects and liens against said property *to be eliminated or removed before issuance of the Mortgagee's policy of title insurance . . . .* " (Emphasis ours.)

The emphasized words were crossed out of the Agreement. Thus, Security under this Agreement was not free to require Franchi to "eliminate or remove" liens before issuance of the policy was required. To the contrary, Security undertook the obligation to issue a Commitment to Insure against liens which accrued before and after March 26, 1965. The mechanics liens involved here attached to all or part of the property described in the March 26, 1965, Agreement. The policy, as provided for in the March 26, 1965, Agreement, was to issue insuring mortgagee's security interest in the property "without exception as to mechanics liens". This was not done.

In short, Franchi was not willing to risk impairment of the deed of trust taken by it by reason of mechanics liens. The protection Franchi sought, and for a fee obtained, was Security's covenant to insure Franchi's security from mechanics liens. Security breached this contract, and the deed of trust is impaired by mechanics liens by reason of the judgment and decree of the circuit court in this case.

Security maintains that Franchi, as mortgagee, has sustained no loss as yet because it has not yet been determined that a sale of the property under foreclosure would not produce sufficient money to pay off Franchi's deed of trust note in full, citing Palliser v. Title Insurance Co. of New York, 61 Misc. 490, 115 N.Y.S. 545 (1908),

Supreme Court, Trial Term, New York County, in which it is stated: "A title insurance policy is a contract of indemnity, limiting the insured to a recovery only for actual damages sustained, . . . the insured ordinarily could not maintain an action for damages for breach of a contract of insurance because of the existence of an incumbrance not excepted in the policy, unless he actually suffered loss by reason of the payment or enforcement of the incumbrance. . . . The defendant's policy is to be regarded as a contract of indemnity. In this respect it is analogous to a covenant in a deed against incumbrances, and, therefore, subject to rules applicable to such a covenant. In McGuckin v. Milbank, [46 N.E. 490 (N.Y.Appeals 1897) 492,] the court, by Andrews, C. J., says: 'A covenant against incumbrances is treated as a contract of indemnity, and although broken as soon as made, if broken at all, nevertheless a recovery (beyond nominal damages) is confined to the actual loss sustained by the covenantee by reason of the payment or enforcement of the incumbrance against the property. He is not permitted to recover the amount of the outstanding incumbrance, before payment or loss of the property, although its existence may be an embarrassment to his title and subject him to inconvenience.' "

In Empire Development Co. v. Title Guaranty and Trust Co., Ct. of App. of New York, 225 N.Y. 53, loc. cit. 59, 121 N.E. 468, loc. cit., 470, the highest court of that state in speaking of a *loss* under a title insurance policy, said: "It arises where the insured has been evicted under a judgment of a competent court; *where in such a court the existence of a lien or incumbrance has been declared*; where, on a sale, the property proves to be unmarketable; or where, because of some defect, a mortgage loan has failed." (Emphasis supplied.)

■ The policy of title insurance is in the nature of a warranty. Lawyers Title Insurance Corp. v. Research Loan & Investment Corp., 361 F.2d 764 (9 Cir.

1966); Empire Development Co. v. Title Guaranty & Trust, *supra.*

■ In the instant case Security breached its contract with Franchi in failing to issue a mortgagee's title insurance policy without exception as to mechanics liens; mechanics liens were filed against the property and have been enforced by the judgment of the court in this enforcement action. Franchi's deed of trust has been impaired by the enforcement of said liens, and this constitutes a loss which flowed from Security's breach of the March 26, 1965, contract.

This is an equitable mechanics lien action brought for the purpose of determining, establishing, and enforcing the various and respective rights of the parties thereto. Sec. 429.270, V.A.M.S.

Security suggests that Franchi should not have both repayment of its note in full and a money judgment for the mechanics liens. Franchi states that it demands no more than to have its deed of trust free and clear of mechanics liens, and that if Security can effect a release of the mechanics liens then Franchi would have no right to any recovery against Security Title, and that if a clarification of the judgment is necessary then Franchi agrees such clarification should be made.

The court entered judgment in favor of Ahal and against Robert W. Baebler in the amount of $6,253.15 and a mechanics lien in aid of execution was granted against all of the property except so-called Tract B. The property against which the lien was granted is owned by Franchi. Baebler did not appeal from the judgment against him. Franchi appeals from that part of the judgment in favor of Ahal whereby Ahal was awarded a lien upon the property of Franchi and contends that Ahal was not entitled to a lien against Franchi's property for more than $4,009.34 plus interest.

Shortly before trial, a stipulation was entered into by defendant-respondent Ahal that, in consideration of payment of $9,000

by Security Title to Ahal, Ahal released property, specified as "Parcel B" from the mechanics lien claimed against that land in the amount of $10,053.94. A portion of that stipulation reads as follows: "The total amount of the mechanic's lien claimed against said land and apartments described herein [Tract B] is $10,053.94, and the lien in that amount is released, and the balance of his [Ahal's] lien claim against additional property for improvements consisting of a swimming pool, bath house, parking area and there around and the land upon which said improvements are located is limited to $6,900.00 in principal amount." This $6,900 clearly represents the value of work claimed by Ahal on Tract E; in Ahal's own terms in his stipulation, supra, it is stated: " . . . it is agreed that the sum of $10,053.94 was claimed for work, labor and materials furnished on seventeen apartments" (thereafter described as "Parcel B").

Admittedly, this amount of $10,053.94 was allocated to the work done by Ahal on Tract B; the remainder of Ahal's original claim, $6,900 must be, then, allocated to land in the total project other than Tract B.

In its findings of fact the trial court found that the work done on Tract E had a reasonable value of $4,009.34. If all but the lien for the reasonable value of work done on Tract E was released by the stipulated agreement between Ahal and Security Title, then the only amount which remains as a lien against Franchi's property is that value of work done by Ahal on Tract E, which Ahal asserts in his cross-bill to be $6,900 but which the trial court found to have a reasonable value of $4,009.34. Since defendant-respondent Ahal does not challenge this finding of fact by the trial court in the determination of this appeal, this finding will stand. The only amount which can be claimed as a lien against Franchi's property by Ahal, then, is the reasonable value of the work done on Tract E, found by the trial court to be $4,009.34, regardless of what amount Ahal may properly be entitled to in a personal judgment against Baebler.

Although this conclusion agrees with the trial court's findings of fact, it requires the modification of the court's conclusions of law to the extent that, although Ahal is entitled to a general judgment against Baebler in the amount of $5,063.28 plus interest from August 19, 1965, Ahal is only entitled to a lien against the property of Franchi, less so-called Tract B, for the amount of $4,009.34 plus interest from August 19, 1965, to the date of judgment, July 15, 1969.

The trial court's conclusions of law are modified to reflect the lien rights of Ahal against the property of Franchi and are modified as follows:

*"Claim of Oliver T. Ahal*

"32. Oliver T. Ahal is entitled to a general judgment against Robert W. Baebler in the amount of $5,063.28 plus interest on said amount from August 19, 1965.

"33. Oliver T. Ahal is entitled to a mechanics lien against the entire tract less so-called Tract B for the amount of $4,009.34 plus interest on said amount from August 19, 1965."

The trial court's judgment is also modified as to the mechanics lien against the property of Franchi to read:

"D. That Oliver T. Ahal . . . have and recover against Robert W. Baebler the amount of $6,253.15 . . . that if no sufficient property of said Defendant be found to satisfy these judgments and the costs of these proceedings, that said execution be levied against the real property owned by Franchi Construction Co., Inc., limited, however, in this lien to the amount of $4,009.34 plus interest on said amount from August 19, 1965. Under the lien limits set forth above, Ahal is entitled to apply this lien

against all the property of Franchi included in the total land project in question, except Tract B." (Tract B is described in the next paragraph of the judgment.)

This amount of the judgment which Ahal can apply as a lien against the property of Franchi represents the amount for which judgment should have been entered by the trial court, as a lien, on July 15, 1969. This amount is the principal amount to be applied as a lien according to the findings of fact and the modified conclusions of law set out above, in the principal sum of $4,009.34, plus interest at six percent on that amount from August 19, 1965, until July 15, 1969, the date of final judgment.

As this case now stands, the mechanics lien claimants have personal judgments in various amounts against Baebler. These judgments have not been appealed from and, of course, will not be disturbed. The mechanics lien claimants herein have liens against all or part of the 26-acre tract in aid of their judgments, and the judgments and decrees granting this relief are affirmed except as to the amount of the lien in favor of Ahal.

As previously indicated, Ahal is not entitled to a mechanics lien for the full amount of Ahal's judgment against Baebler, and the trial court is directed to amend Part D of its judgment of July 15, 1969, so as to limit the lien decreed in favor of Ahal to the principal sum of $4,009.34 plus interest at the rate of six percent and to enter its judgment as modified as of July 15, 1969.

Until now the question of priority of the mechanics liens and the four deeds

of trust was open. By this decision that question is determined in favor of the lien claimants. The question of the consequences of the breach of the March 26, 1965, Agreement by Security was also an open one, but that question is also determined by this court's holding that Franchi was damaged by this breach of contract and that the relief Franchi is entitled to is the release of the instant mechanics liens from the property against which those liens attached.

Franchi is not entitled to both a release of the mechanics liens and a money judgment equal to said mechanics liens. The release of those liens may be accomplished in whole or in part by methods other than the expenditure of money by Franchi. We cannot anticipate the method by which, or by whom, the mechanics liens herein involved will be satisfied and released. To the extent that Franchi is required to expend money to obtain the release of said liens, it would be entitled to be indemnified by Security, but only to that extent and no more.

This holding demands that the money judgment heretofore entered in favor of Franchi and against Security be reversed and the cause remanded to the trial court for the entry of such further orders and, if necessary, judgments in this equitable proceeding consistent with the views herein expressed.

Costs of this appeal are assessed fifty percent against Prudential Savings and Loan Association; twenty-five percent against Security Title Co. and twenty-five percent against Franchi Construction Co., Inc.

All of the Judges concur.